# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 15, 2018

Plaintiff-Appellee,

v

No. 335252
Wayne Circuit Court
LC No. 15-009489-01-FC

ERIC VINCENT MARTIN,

Defendant-Appellant.

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to life imprisonment without the possibility of parole for the first-degree premeditated murder conviction, 19 months to 5 years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises from the fatal shooting of Karnell Dorris (Karnell or the victim) on October 28, 2015, in the parking lot of the Bibleway Church of God in Christ (the church), located in Detroit, Michigan. Anthony Singleton (Anthony), a minister at the church, was an eyewitness to the murder and identified defendant as the killer. Anthony's father, Herbert Singleton (Herbert), the pastor of the church, also witnessed the murder but was unable to identify the killer. Defendant raises several issues in his brief on appeal and Standard 4 brief on appeal, however, we find none to be meritorious.

## I. PROSECUTORIAL MISCONDUCT

First, in his Standard 4 brief, defendant argues that the prosecutor engaged in misconduct during his opening statement by impermissibly vouching for Anthony's credibility. Defendant also argues in his brief on appeal that the trial court abused its discretion in denying defendant's request for a mistrial premised on this alleged vouching. We disagree.

Below, defendant failed to object to any purported prosecutorial misconduct and request a curative instruction. Although defendant later moved for a mistrial on the basis of the alleged vouching for Anthony in the prosecutor's opening statement, defendant did not

contemporaneously object or request a curative instruction below with respect to the alleged acts of prosecutorial misconduct that he asserts on appeal. Accordingly, that issue is unpreserved. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). However, the issue of whether defendant was entitled to a mistrial premised on the prosecutor's alleged vouching for Anthony was preserved for appeal when defendant moved for a mistrial, which was denied by the trial court. See *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003).

We review unpreserved claims of prosecutorial misconduct for plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). To demonstrate plain error warranting appellate relief, a defendant must prove: (1) an error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show a plain error affected defendant's substantial rights, defendant must generally make "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Error requiring reversal cannot be found where a curative instruction would have alleviated any prejudice. *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements . . . and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235.

With respect to defendant's arguments relating to denial of his motion for a mistrial, we review the trial court's decision to deny such a motion for an abuse of discretion. *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. (citations omitted).

During his opening statement, the prosecutor summarized Anthony's anticipated testimony. Specifically, the prosecutor summarized that Anthony would testify that he was outside of the church when he heard gunshots. After moving inside and locking the doors, Anthony heard the gunshots continue. Looking out a window, Anthony witnessed defendant shooting repeatedly at the victim, and called 9-1-1. The prosecutor further stated that Anthony was able to identify defendant in a photo lineup, and that Anthony would identify defendant as the shooter in court during trial. The prosecutor then stated, "You'll be able to trust him," in reference to Anthony.

Although defense counsel did not contemporaneously object or request a curative instruction with respect to the alleged vouching for Anthony in the prosecutor's opening statement, defense counsel later moved for a mistrial on this basis. The trial court denied the defense motion for a mistrial, with the court explaining its decision as follows:

> Let me just say this, Mr. Lawrence [the prosecutor], while you [sic] giving your opening statement. I recall you using the phrase, 'you can trust him.' And my eyebrows went up.
>
> But I don't think there's been a showing of bad faith for Mr. Lawrence's part. And opening statements are not evidence. I'm not sure if you are making reference to the witness's identification of the defendant, or in what regard. So in light of that the defense's motion for retrial [sic] is denied.

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). It is permissible in an opening statement for a prosecutor to state facts that he intends to prove at trial. *Id*. Although a prosecutor may not vouch for a witness's credibility by suggesting some special knowledge concerning the witness's truthfulness, *People v Bahoda*, 448 Mich 261, 275; 531 NW2d 659 (1995), a prosecutor is permitted to argue from the facts that a witness should be believed, *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

When viewed in context, the prosecutor's comment during his opening statement that the jury could trust Anthony was not improper. The prosecutor did not suggest that he possessed any special knowledge concerning Anthony's truthfulness. The challenged remark was made following an extensive summary of Anthony's anticipated testimony, including the facts surrounding Anthony's opportunity to observe the homicide. The prosecutor referred to the following facts: Anthony heard gunshots while outside the church; Anthony then went inside the church and looked out the window, where he could see defendant firing shots and committing the homicide; it was light outside; defendant was not wearing a mask; Anthony called 911 and reported the incident; Anthony described the suspect to the police; Anthony identified defendant in a photographic lineup; and Anthony was expected to identify defendant in the courtroom at trial. It was after summarizing all of these facts that the prosecutor stated that the jury would be able to trust Anthony. The prosecutor did not suggest that he had any particular knowledge other than what the evidence would show. Overall, the prosecutor's remark was a permissible assertion that, on the basis of Anthony's anticipated testimony, he should be believed.

Even assuming *arguendo* that the prosecutor's comment was somehow improper, defendant fails to establish that a curative instruction would not have alleviated any prejudice. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich App at 22. Also, the trial court instructed the jury at the outset of the trial that the attorneys' opening statements were not evidence, that the jury must decide the case only on the basis of the evidence, and that it was for the jury to decide the facts of the case, including whether the jury believed what each witness said. And at the close of trial, the trial court again instructed the jury that the attorneys' statements and arguments were not evidence, that the jury should decide the case only from the evidence, and that the jury was the sole judge of the facts. These instructions sufficed to alleviate any prejudicial effect, *Seals*, 285 Mich App at 25, and we presume jurors to have followed their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Again, because defendant did not preserve the prosecutorial misconduct issue, this Court's "review is for outcome-determinative, plain error." *Seals*, 285 Mich App at 22. Defendant was not convicted solely on the basis of Anthony's testimony: Anthony's identification of defendant as the perpetrator was corroborated by substantial circumstantial evidence. Shortly before the murder occurred, Early Dorris III (Early) and Djon Hall saw defendant and Karnell together on the porch of Karnell's house, which was near the church where the murder occurred. Hall later saw defendant and Karnell fighting in a field across the street, during which defendant had a gun, and defendant chased Karnell in the direction of the

church.[1]  A forensic analysis of cell phone records indicated that a cell phone associated with defendant was in the area of the crime scene when the murder was committed.  A call was placed from the cell phone associated with defendant to the cell phone of Unique Lyons, the mother of defendant's children, one minute after the 911 call was made to the police reporting the murder.  Lyons testified that defendant sounded out of breath as if he was running when he called her.  Defendant then came to Lyons's house, which was near the crime scene, looking like he had been in a fight.  Defendant's coat was ripped and he had blood on his hand that appeared to be dripping onto his pants.  Defendant later called Lyons and asked what people around the neighborhood were saying about the police investigation.  After being incarcerated, defendant told Lyons that he was upset with her for having told the police about defendant having blood on him.  In light of strong evidence of guilt, defendant has not demonstrated that the prosecutor's comment in his opening statement that the jury would be able to trust Anthony was outcome-determinative.  See *id*. at 25.

Defendant also suggests in his Standard 4 brief that the prosecutor disparaged defendant and defense counsel, but fails to specifically identify any disparaging remarks.  Likewise, we find none.  Defendant further fails to present any meaningful appellate argument regarding this bare assertion.  Accordingly, we consider this aspect of defendant's argument to be abandoned.  See *People v Bosca*, 310 Mich App 1, 48; 871 NW2d 307 (2015), app held in abeyance 872 NW2d 492 (Mich, 2015) ("Because defendant has failed to sufficiently develop this argument or to provide any record citation in support of his claim, we find that the issue has been abandoned on appeal.").

Defendant next asserts that the prosecutor's comments, when considered in the aggregate, deprived him of a fair trial.  Although "[t]he cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal," *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007), defendant has failed to establish even one instance of prosecutorial misconduct.  "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal."  *Id*.

Finally, the trial court did not abuse its discretion by denying defendant's motion for a mistrial premised on the alleged vouching for Anthony.  "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way."  *Lane*, 308 Mich App at 60 (quotations and citations omitted).  As discussed, the prosecutor did not engage in impermissible vouching in his opening statement.  In any event, any prejudice was alleviated by the trial court's instructions, and any error was not outcome-determinative given the strong corroborated evidence of defendant's guilt.  The trial court's denial of defendant's motion for a mistrial therefore fell within the range of principled outcomes.

## II. REQUEST FOR ADJOURNMENT

---

[1] Although Hall did not identify defendant, Hall indicated that the person fighting with Karnell and chasing Karnell was the same person who had been on Karnell's porch with Karnell, and Early's testimony established that defendant was the person who was on the porch with Karnell.

Second, in his brief on appeal, defendant argues that the trial court abused its discretion by denying defendant's request for an adjournment midtrial, and that denial of defendant's motion thereby deprived him of his constitutional right to present a defense. Defendant contends that an adjournment should have been granted so that defendant could locate and produce a purported alibi witness named Erica Knox. Defendant's argument is unavailing.

Although defendant preserved the overall adjournment issue by requesting an adjournment in the trial court, *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000), defendant failed to preserve the constitutional aspect of the issue by failing to argue in the trial court that denial of his request for an adjournment constituted a deprivation of his constitutional right to present a defense. See *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "An objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground." *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Therefore, while the overall adjournment issue is preserved, the constitutional aspect of the issue is not.

"This Court reviews the grant or denial of an adjournment for an abuse of discretion." *Snider*, 239 Mich App at 421. "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). A trial court's refusal to grant an adjournment is not a ground for reversal unless the defendant shows that prejudice resulted from the denial of the request for an adjournment. *Snider*, 239 Mich App at 421-422.

Whether a defendant was denied the constitutional right to present a defense constitutes a question of law that is reviewed de novo. *King*, 297 Mich App at 472. Because defendant failed to preserve the constitutional issue, this Court's review is for plain error affecting substantial rights. *Id*. "This requires the defendant to show that the plain error affected the outcome of the proceedings." *Id*. at 473, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[R]eversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings regardless of the guilt or innocence of the accused." *King*, 297 Mich App at 473, citing *Carines*, 460 Mich at 763.

MCL 768.2 provides, in relevant part: "No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown in the manner provided by law for adjournments, continuances and delays in the trial of civil causes in courts of record[.]" Therefore, "[a] motion for adjournment must be based on good cause." *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003), citing *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002). MCR 2.503(C) provides, in relevant part:

> (1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.

> (2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

In *Coy*, 258 Mich App at 18-19 (quotation marks and citations omitted), this Court explained:

> to invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence. "Good cause" factors include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments. Even with good cause and due diligence, the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion.

We conclude that the trial court's denial of defendant's request for an adjournment fell within the range of reasonable and principled outcomes. Defendant has not demonstrated good cause or diligence. Defendant did not assert a constitutional right when requesting a continuance. Further, the record supports the conclusion that defendant was negligent. Defendant did not include Knox's name in his amended notice of alibi defense. At the hearing held on the date that trial was originally scheduled to begin, defendant asserted that a person named "Erika" – whose last name defendant said he did not know at that time – was his alibi witness. The trial court granted defendant's request for a new appointed trial attorney, appointed a defense investigator, and adjourned the trial to a later date. Trial began three and one-half months later.

During trial, after the prosecution rested, defense counsel informed the court that efforts to locate Knox had been unsuccessful, and therefore Knox was never subpoenaed. Defense counsel unsuccessfully moved for an adjournment in order to continue searching for Knox. The trial court's denial of defendant's motion does not constitute an abuse of discretion where defense was afforded more than adequate time and resources to locate Knox. Despite having ample time and resources to locate Knox, defense counsel could not offer any assurance as to when, or if, Knox would appear, despite the prosecution having concluded its case-in-chief. See *People v Taylor*, 159 Mich App 468, 490; 406 NW2d 859 (1987) (the trial court did not abuse its discretion in denying an adjournment requested due to the absence of a defense witness where the witness had not been subpoenaed and "no one could assure the court when, if ever, the witness would appear.").

Further, even if defendant had demonstrated good cause and diligence, reversal is not required because defendant cannot demonstrate that he was prejudiced as a result of the denial of his motion for adjournment. *Coy*, 258 Mich App at 18-19; *Snider*, 239 Mich App at 421-422. Defense counsel did not and could not present an offer of proof concerning Knox's expected testimony because defense counsel had never even spoken with Knox. The only support for defendant's motion for an adjournment defendant's unsubstantiated claim that Knox was an alibi witness. Even if she could have been located, the record affords no basis to conclude that Knox would have testified in favor of defendant. See *People v Tommolino*, 187 Mich App 14, 19-20; 466 NW2d 315 (1991) (the defendant failed to demonstrate prejudice in the analogous context of an ineffective assistance of counsel claim where there was no evidence that purported alibi witnesses would have testified in favor of the defendant if defense counsel had secured the witnesses' presence at trial). Additionally, as previously discussed, the evidence of defendant's guilt was overwhelming. Accordingly, we cannot conclude that defendant has demonstrated that he was prejudiced as a result of the denial of his motion to adjourn.

We further conclude that defendant was not denied his constitutional right to present a defense.

> A defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses. But this right is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. [*People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008) (quotation marks and citations omitted).]

Stated differently, "[t]he right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. Michigan, like other states, has a legitimate interest in promulgating and implementing its own rules concerning the conduct of trials." *King*, 297 Mich App at 473 (quotation marks and citations omitted). As explained, defendant has failed to establish that the trial court erred in denying his request for an adjournment or that he was prejudiced as a result. In other words, defendant did not satisfy the established rules of procedure for granting an adjournment. Defendant has presented no argument suggesting that the rules governing adjournments are arbitrary or disproportionate to the purposes they were designed to serve. See *id*. at 474. Because this constitutional issue is unpreserved, defendant must demonstrate plain error that affected the outcome of the proceedings. *Id*. at 472-473. Again, the record contains no evidence concerning the substance of Knox's anticipated testimony; conversely evidence of defendant's guilt is overwhelming. Defendant therefore cannot establish that any error affected the outcome of the trial.

## III. EVIDENTIARY ISSUES

Defendant next argues in his Standard 4 brief that the trial court clearly erred in admitting evidence of Anthony's identification of defendant because the pretrial photographic lineup procedure was unduly suggestive and because there was no independent basis for Anthony's in-court identification of defendant at trial. We disagree.

A trial court's ultimate determination regarding whether to admit identification evidence is reviewed for clear error. *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. Any issues of law related to this decision are reviewed de novo. *Id*.

Defendant contends that the photographic lineup was unduly suggestive because four of the other five persons in the photographic lineup did not have facial hair, and Anthony admitted that he selected defendant's photograph based on the facial hair. Defendant also argues that four of the five other persons were approximately 6 feet tall and approximately 200 pounds,[2] whereas

---

[2] The record does not substantiate defendant's claim that four of the five filler photographs were of persons of this height and weight. Anthony agreed on cross-examination that one of the filler photographs was of a person who was 6'1" and 205 pounds, but there is no evidence in the record that four of the photographs were of a person of such a height and weight.

witnesses had described the shooter as being 5 feet and 6 to 8 inches tall and of slender build.[3] Defendant says that he was the only person in the photographic lineup wearing a white undershirt or tank top.[4] Defendant also says that Detroit Police Sergeant Derrick Griffin, who administered the photographic lineup, assured Anthony that he had made the correct choice. Finally, defendant criticizes Griffin for failing to use a blind administrator technique in conducting the photographic lineup. We disagree with defendant's arguments.

"A photographic identification procedure or lineup violates due process guarantees when it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *McDade*, 301 Mich App at 357. "The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "Simply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998).

Defendant's primary contention that he was singled out because of physical differences between himself and the other persons shown in the photographic lineup. "Physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants. Physical differences generally relate only to the weight of an identification and not to its admissibility." *Hornsby*, 251 Mich App at 466 (citation omitted); see also *McDade*, 301 Mich App at 357.

In this case, there is no evidence that the alleged differences in height or weight among the participants were apparent from the photographs, nor is there any indication that such physical characteristics caused Anthony to select defendant's photograph. The photographs used in the lineup showed all participants from the neck up. Indeed, Anthony testified that he was unable to discern the lineup participants' respective heights from their photographs and did not remember seeing any numbers indicating the weight of the persons shown. See *Hornsby*, 251 Mich App at 467 (although the lineup participants did not mirror each other in height and weight, the defendant was not significantly distinguished from the other participants, and the witnesses did not single out the defendant on the basis of marked differences between his physical characteristics and those of the other participants). Nor is there any indication that defendant supposedly being the only participant wearing a white undershirt led to Anthony's identification of defendant. Although it appears that two other participants besides defendant had facial hair, Anthony testified that he found it difficult to see any facial hair, other than a mustache on defendant, because of shadows in the photograph. When asked what he meant when he wrote that the photograph of defendant "looks like shooter going by the facial hairs," Anthony responded:

---

[3] According to the Department of Corrections website, defendant is 5'9" and 150 pounds.

[4] The record does not substantiate this assertion. Two of the filler photographs are of persons who appear to be wearing a white or light-colored shirt.

The facial hair that I saw on the shooter and looking at the photo was, just from that photo with it being shade, you know, so shady and dark, it's just kind of hard to tell. But I knew by looking at the photo and the youngman [sic] that I saw shooting in the parking lot that that was the shooter.

Overall, defendant has provided no basis on the available record to conclude that he was substantially distinguished from the other lineup participants, and to the extent physical differences existed, they related to the weight of the identification rather than to its admissibility. *Id.* at 466. See also *McDade*, 301 Mich App at 357 ("A lineup in which the defendant was the only participant with both a mustache and a goatee was found to be not impermissibly suggestive in *People v Hughes*, 24 Mich App 223; 180 NW2d 66 (1970).") (citation omitted).

Defendant next argues that the photographs contained names and biographical information about the lineup participants. However, Griffin testified that he folded the photographs during the lineup so that Anthony could not see the names or biographical information when looking at the photographs, and Anthony testified that he did not see any written information about the persons when viewing the photographs. Likewise, the photographs included in the record on appeal do not provide any biographical information.

Defendant further asserts that Griffin essentially assured Anthony that he had selected the correct person, however the record does not support this assertion. During defense counsel's cross-examination of Anthony, defense counsel asked, "After you got that picture, you picked that picture, were you assured that that was the correct person?" Anthony responded, "Yes." Given that defense counsel phrased the question in the passive voice, it is not clear what Anthony meant when he agreed that he was "assured" that he had picked the correct person. That is, it is not clear whether Anthony meant that he himself was sure that he had chosen the correct person, or that someone else assured him of this; nor is it clear who made any such assurance. Defendant assumes that Griffin made an assurance, but the record does not substantiate this assumption.[5]

Defendant also asserts that Griffin did not use a so-called "double blind" technique in administering the photographic lineup, but should have.[6] However, this alleged fact by itself

---

[5] Indeed, defense counsel at another point asked Anthony, "And you've had enough time to be assured that what you were saying is true in your mind, correct?" Anthony responded, "Correct." This exchange suggests that the term "assured" as used by defense counsel and Anthony did not necessarily mean that someone was assuring Anthony.

[6] As this Court has explained:

"Double blind" is a scientific term referring to a manner of conducting a study in which neither the subjects *nor the experimenters* know which of multiple variables is which, generally accomplished by some kind of coding system and logged randomization that can be retrieved after the study is completed. The purpose of double-blind testing is . . . to ensure that the experimenters' own perceptions and biases do not unconsciously affect the outcome of the test.

fails to establish that the photographic lineup procedure was unduly suggestive. See *People v Blevins*, 314 Mich App 339, 350; 886 NW2d 456 (2016), app held in abeyance 884 NW2d 579 (Mich, 2016), app held in abeyance 884 NW2d 580 (Mich, 2016) ("Defendant contends that the lineups were not 'double blind,' so the officers conducting the lineup might have subtly or unconsciously suggested a 'correct' choice to the witnesses, but this conclusion is pure speculation."). "Whether or not the lineup[] could somehow have been conducted 'better,' defendant has not satisfied his burden of establishing that the trial court erred by finding [it] not unduly suggestive." *Id*.

We further conclude that even if the pretrial photographic lineup procedure was unduly suggestive, an independent basis existed for Anthony's in-court identification of defendant at trial. "If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness's in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification." *Colon*, 233 Mich App at 304. Factors to consider in assessing whether an independent basis for the identification exists include: whether the witness had a prior relationship with or knowledge of the defendant; the witness's opportunity to observe the offense, including the length of time of the observation and lighting conditions; the length of time between the offense and the identification; any discrepancies between the witness's description and the defendant's actual description; any prior proper identification or failure to identify the defendant; any prior identification of another person as the assailant; the witness's psychological and physical condition; and any idiosyncratic or special features of the defendant. *People v Gray*, 457 Mich 107, 115-116; 577 NW2d 92 (1998). This list is not exhaustive, all factors are not relevant in every case, and a court may put greater or lesser weight on any factor depending on the circumstances. *Id*. at 117 n 12.

In this case, Anthony did not have a prior relationship with or knowledge of defendant, but he did have an adequate opportunity to observe the offense. Anthony estimated that he observed the shooter for approximately 30 seconds during the shooting incident from 25 feet away. Nothing obstructed Anthony's view, it was light outside, and the shooter was not wearing a mask. Based on the foregoing, Anthony was able to identify defendant, and no one else, both at defendant's preliminary examination two and one-half weeks after the murder, and again at trial approximately nine months later. Anthony's overall description of the shooter was generally consistent with defendant's appearance, and there is no evidence of any idiosyncratic or special features of defendant that are pertinent to the analysis. Further, there is no indication that Anthony suffered from any psychological or physical condition that affected his ability to perceive and remember what was occurring. Finally, despite the fact that defendant had removed his facial hair at the time of trial, Anthony was still able to identify defendant as the shooter "[b]y looking at his face." When the relevant factors are considered as a whole, an independent basis existed for Anthony's in-court identification of defendant at trial.

---

[*People v Blevins*, 314 Mich App 339, 350 n 4; 886 NW2d 456 (2016), app held in abeyance 884 NW2d 579 (Mich, 2016), app held in abeyance 884 NW2d 580 (Mich, 2016).]

In any event, any error in the admission of the identification evidence in this case was harmless, and "[e]rroneously admitted identification testimony warrants reversal only when the error is not harmless beyond a reasonable doubt." *Blevins*, 314 Mich App at 349. As explained earlier, Anthony's identification of defendant was corroborated by significant circumstantial evidence. Defendant and Karnell were observed together shortly before the murder; defendant had a gun, fought with Karnell, and chased him toward the church where the murder occurred. A forensic analysis of cell phone records placed defendant in the area of the crime scene at the time of the murder. Shortly after the murder, defendant called Lyons and then appeared at her house appearing as if he had been in a fight, with a torn coat and blood that appeared to be dripping from his hand onto his pants. When Lyons asked defendant if he was okay and asked him what had happened, defendant responded, "[M]ind your f---ing business." Later that night, defendant called Lyons to ask her about the police investigation in the neighborhood. After he was incarcerated, defendant expressed to Lyons that he was upset with her for telling the police that he had blood on him. Further, the eyewitness testimony of Anthony and Herbert established that there was only one shooter, which is consistent with the parties' stipulation that all of the shell casings recovered at the homicide scene were fired from the same firearm. Overall, there was significant circumstantial evidence of guilt in addition to Anthony's identification of defendant, and any error in admitting the identification evidence was therefore harmless beyond a reasonable doubt.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues in his Standard 4 brief that he was denied the effective assistance of counsel. We disagree.

Defendant failed to move for a new trial or requesting a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Accordingly, because no factual record has been created on which this Court may evaluate defendant's claims of ineffective assistance of counsel, defendant's claims are unpreserved. *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Id.* at 187 (citation omitted). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id.* at 188. However, where no factual record has been created in regard to defendant's claim of ineffective assistance of counsel, as is the case here, "this Court's review is limited to mistakes apparent on the lower court record." *Id.*

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v. Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is a defendant's burden to prove "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188, citing *Strickland v. Washington*, 466 U.S 668, 687; 104 S Ct 2052; 80 L.Ed 2d 674 (1984). A defendant must show that "but for counsel's deficient performance, a different result would have

been reasonably probable." *People v. Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011), citing *Strickland*, 466 U.S at 694–696. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v. Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant makes numerous assertions of ineffective assistance of counsel. Defendant contends that his first appointed trial attorney was ineffective because he failed at the hearing on the motion to suppress the identification to state any reasons why the identification should be suppressed. We disagree. Defense counsel filed a written motion to suppress the identification that contained arguments in support of suppressing the identification. At the hearing on this motion, defense counsel articulated defendant's position and cross-examined Griffin. Defendant has not established the factual predicate for this aspect of his claim, and he has failed to show that defense counsel's representation fell below an objective standard of reasonableness.

Defendant next asserts that defense counsel led defendant to believe that a live lineup would be conducted but later told defendant that a live lineup could not be conducted. The record does not substantiate defendant's assertion. Defendant has thus failed to establish the factual predicate for this part of his claim. Moreover, "[a] right to a lineup arises when eyewitness identification has been shown to be a material issue and when there is a reasonable likelihood of mistaken identification that a lineup would tend to resolve." *People v McAllister*, 241 Mich App 466, 471; 616 NW2d 203 (2000), remanded in part on other grounds 465 Mich 884 (2001). Defendant has not established a reasonable likelihood that Anthony mistakenly identified defendant. Therefore, a motion for a live lineup would have been meritless and futile, and "[c]ounsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014). Moreover, defendant has failed to demonstrate that he was prejudiced. Given that Anthony consistently identified defendant as the shooter in the photographic lineup, at the preliminary examination, and at trial, no basis exists to conclude that Anthony would have failed to identify defendant in a live lineup.

Next, defendant asserts defense counsel was ineffective for failing to obtain an expert witness on photographic identification. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). A defendant faces a heavy burden in overcoming the presumption that defense counsel employed an effective trial strategy. *Id*. "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id*. (quotation marks and citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Jackson*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citation omitted). Defendant has presented no offer of proof that an expert witness on photographic identification would have testified in any specific manner. Hence, defendant has failed to establish that calling such an expert might have made a difference in the outcome. See *Payne*, 285 Mich App at 190 (mere speculation that an expert could have provided favorable testimony is insufficient to establish that the retention of such an expert would have altered the outcome of the lower court proceedings); *Ackerman*, 257 Mich App at 455 (where the defendant offered no proof that an expert witness would have testified favorably to the defense, the defendant failed to establish the factual predicate for his claim). Defendant's claim thus lacks merit.

-12-

Finally, defendant contends that his second appointed trial attorney was ineffective for failing to investigate, subpoena, and present an alibi witness at trial. Defendant does not indicate to which purported alibi witness he is referring. Defendant's amended alibi notice listed five alibi witnesses, none of whom defendant called at trial. At trial, there was discussion concerning the efforts to locate a sixth purported alibi witness, Knox, who was not listed on defendant's amended alibi notice. Because defendant does not even indicate which alleged alibi witness he claims Diallo was ineffective for failing to investigate, subpoena, and call at trial, defendant has abandoned this issue. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

In any event, regardless of which alleged alibi witness defendant is referring to, his argument lacks merit. The failure to undertake a reasonable investigation may constitute ineffective assistance of counsel. See *People v Trakhtenberg*, 493 Mich 38, 51-55; 826 NW2d 136 (2012). Defense counsel has a duty to conduct reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *Id*. at 52. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *Russell*, 297 Mich App at 716 (quotation marks, brackets, and citation omitted). The decision whether to call a witness is presumed to be a matter of trial strategy with respect to which this Court will not substitute its judgment. *Ackerman*, 257 Mich App at 455. Again, the failure to call a witness amounts to ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *Payne*, 285 Mich App at 190. "A substantial defense is one that might have made a difference in the outcome of the trial." *Jackson*, 313 Mich App at 432 (quotation marks and citation omitted).

Defendant has failed to establish the factual predicate for his claim that defense counsel did not investigate an alibi witness. There is nothing in the record to support this claim. Defense counsel indicated that the purported alibi witnesses listed on defendant's amended alibi notice had all been interviewed with the exception of Knox, who was not listed on the amended alibi notice because efforts to locate Knox had been unsuccessful. Additionally, defendant has not shown that defense counsel failed to conduct a reasonable investigation concerning any alibi witness. Nor has defendant demonstrated that the failure to call any of his purported alibi witnesses deprived him of a substantial defense. Defendant makes no offer of proof concerning the expected testimony of any alibi witness. Because there is no evidence that any alibi witness would have testified in favor of defendant, and because the evidence against defendant was overwhelming, defendant has failed to establish that he was deprived of an alibi defense that might have made a difference in the outcome of the trial.

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro