# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KYEOLE SHAKUR MITCHELL,

Defendant-Appellant.

UNPUBLISHED
July 26, 2018

No. 338227
Ingham Circuit Court
LC No. 16-000485-FC

Before: RONAYNE KRAUSE, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of three counts of assault with intent to murder, MCL 750.83, carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to concurrent prison terms of 216 to 360 months for the assault with intent to murder convictions and 24 to 60 months for the concealed weapon conviction, and to a consecutive two-year term for the felony-firearm conviction. Defendant appeals as of right and we affirm.

On April 25, 2016, defendant repeatedly fired a handgun into a car driven by Shykevia Moore and occupied by Rajeanne Dailey, who was in the final trimester of her pregnancy. Dailey was shot in the neck and was subsequently paralyzed from the neck down. Her child was safely delivered via an emergency C-section procedure. Ranard McFadden, Moore's half-brother, was also in the car, having just entered the vehicle after an extended argument with Charles Simmons over a debt. McFadden and Simmons had started the argument while at Simmons' house at least a few hours prior to the shooting. At the time of the shooting, McFadden had been trying to walk home to defuse the situation. Defendant is Simmons' cousin. Defendant arrived at Simmons' house about twenty minutes after McFadden and was present during the argument between McFadden and Simmons. During the aforementioned argument, defendant often assumed a threatening posture and repeatedly "clutched" on a handgun tucked in the waistband of his pants. The surveillance camera of a nearby home captured the shooting. Both Moore and McFadden identified defendant as the shooter.

Defendant's first argument is that the identifications of defendant by Moore and McFadden were invalid. Although defendant objected to Moore's identification, defendant did not object to McFadden's identification. Ordinarily, this Court reviews a trial court's decision regarding identification evidence for clear error. *People v Hornsby*, 251 Mich App 462, 466;

-1-

650 NW2d 700 (2002). The absence of an objection to McFadden's identification fails to preserve that issue for appeal. *People v Moss*, 397 Mich 69; 243 NW2d 254 (1976). Nevertheless, we will review unpreserved claims for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"Identity of the defendant is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), citing *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). A defendant's due process rights are violated by the use of an "unduly suggestive" identification procedure. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), citing *Stovall v Denno*, 388 US 293, 302; 87 S Ct 1967; 18 L Ed 2d 1199 (1967). A procedure used in a lineup or photographic identification is unduly suggestive, and therefore in violation of due process guarantees, when it produces "a substantial likelihood of misidentification." *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013); *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). Factors that a court should consider to determine the "likelihood of misidentification" include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." [*Kurylczyk*, 443 Mich at 306, quoting *Neil v Biggers*, 409 US 188, 199-200; 93 S Ct 375; 34 L Ed 2d 401 (1972).]

The burden of demonstrating that a procedure used in identification was impermissibly suggestive is with the defendant. *People v McElhaney*, 215 Mich App 269, 286-287; 545 NW2d 18 (1996).

Here, defendant argues that the identifications of defendant by McFadden and Moore were the result of unduly suggestive procedures. The police showed McFadden, whose preliminary examination testimony was read into the record because he refused to testify at trial, one photograph from which he identified defendant. "Improper suggestion in photographic identification procedures may arise when the witness is shown only one person or a group of people in which one person is singled out in some way." *People v McAllister*, 241 Mich App 466, 472; 616 NW2d 203 (2000). In *Gray*, 457 Mich at 111-115, the Court found that a victim's identification of the defendant based on showing her "a single color photograph of the defendant" and stating "that this was the man the police had arrested for the assault," after her tentative identification during an initial lineup, was invalid because it was unduly suggestive.

Here, however, McFadden identified defendant as the assailant to the police rather than the police suggesting to McFadden, through the photograph, that defendant was the assailant. McFadden described his relationship with Simmons as closer than brothers, and explained that he had seen defendant "[a] bunch. A lot" over the "two, three years" that he had known him because he was the "do boy" of their "crew," meaning that McFadden had paid defendant to perform various acts of violence in the past. McFadden had told the police that he knew

defendant well through Simmons and had seen defendant "over 50 times" for "hours and hours." He identified defendant as being involved in the shooting and provided defendant's identity[1] to the police. Additionally, McFadden testified that he was with defendant in a parked car for some time prior to the shooting and that defendant was walking behind him shortly before the shooting, and he narrated the surveillance footage of himself, defendant, and Simmons during the shooting.

In *Gray*, 457 Mich at 111, quoting *People v Anderson*, 389 Mich 155, 178; 205 NW2d 461 (1973), the Court reasoned that "when 'the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person because "an improper suggestion often arises when 'the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person.'"" Here, the circumstances are the opposite; McFadden told the police that defendant was the assailant prior to confirming for them, through the photograph, that they had identified the correct person as the assailant. In *People v Woolfolk*, 304 Mich App 450, 457-458; 848 NW2d 169 (2014), the Court concluded that in circumstances where the "witness testified that he knew, and grew up with, the shooter," and a single photograph "was used only to help confirm the identity of the person the witness had already identified—using a nickname—as the shooter," there was no "substantial likelihood of misidentification" or violation of the defendant's right to due process. Similarly, McFadden had extensive interactions and a prior relationship with the defendant and the photograph presented to him was used to confirm defendant's identity, rather than to establish defendant's identity. Thus, the use of one photograph was not unduly suggestive.

Similarly, Moore's identification of defendant was not the product of an unduly suggestive procedure used by the police. The police did not factor into her identification of defendant, because she identified the defendant through her own research. Although she may have seen defendant once with Simmons prior to the night of the assault, she did not know him. Moore testified that she saw him on the night of the shooting in a parked car with McFadden and Simmons during their argument over Simmons' debt to McFadden. On the day after the shooting, she asked a friend if he knew the man that associated with Simmons, and she looked at defendant's picture on Facebook and knew immediately that he was the assailant. Because Moore's out-of-court identification was not the result of an unduly suggestive procedure, the jury was free to evaluate and weigh her identification based on her friend's comment, social media research, and her limited interaction with defendant. Where a witness does not identify a defendant in a lineup, the witness' in-court identification is "a credibility issue that [is] properly before the jury to determine." *People v Barclay*, 208 Mich App 670, 675-676; 528 NW2d 842 (1995). Because "there was no impropriety in [the] pretrial identifications of defendant," establishing an independent basis for an in-court identification was not necessary. *McElhaney*, 215 Mich App at 288.

---

[1] McFadden initially identified defendant as "Kyeole Terry," whereupon the police showed McFadden a photograph of defendant and asked whether they "ha[d] the right Kyeole." McFadden confirmed that the photograph of defendant was the person he knew as "Kyeole Terry" and stated that the person depicted had shot the gun.

Defendant argues that his trial counsel provided ineffective assistance by failing to object to the in-court identifications. A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). In order to demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). The defendant must also show that the resultant proceedings were "fundamentally unfair or unreliable." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

An attorney's performance is deficient if "it fell below an objective standard of professional reasonableness." *Jordan*, 275 Mich App at 667. Here, any objection to McFadden's identification of defendant could not have succeeded given that McFadden was familiar with defendant, and had identified defendant as being involved before the police showed him a picture of defendant to confirm. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), citing *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). As for Moore's identification of defendant, defense counsel twice objected.

Next, defendant argues that the prosecutor impermissibly made comments in closing about facts not in evidence. Since defendant failed to contemporaneously object and request a curative instruction, *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016) (quotation omitted), review is precluded unless "an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant cannot meet this burden.

The responsibility of a prosecutor is "to seek justice and not merely convict." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[T]he test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id*. A fair trial for a defendant "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 241; *People v Fisher*, 193 Mich App 284, 291; 483 NW2d 452 (1992). A defendant "has a right to a fair and impartial jury" with jurors who only deliberate about the "evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997) (Habeas Corpus granted on other grounds *Nevers v Killinger* 990 F Supp 844 (ED Mich, 1997)) Here, the prosecutor argued:

> [W]e know that it's one – one weapon that was used in this case because all of the six shell casings came from the same firearm, a Smith & Wesson, I believe the testimony was, possibly an M & P 9-millimeter. So there is no doubt that he knowingly carried a pistol.

Prosecutorial comments must be read as a whole and evaluated in context, including the arguments of the defense and the relationship they bear to the evidence. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors have "great latitude regarding their arguments" in closing, and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236, citing *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).

A State Police firearms expert examined the evidence from the crime scene and determined that six shell casings found were Speer nine-millimeter luger cartridges fired from the same gun, based on marks that were "characteristic of a Smith & Wesson M & P, but no suspected firearm can be overlooked. It's just a characteristic, and it's—like something that they—that firearm does."[2] He found that the recovered nine-millimeter or .357 caliber fired bullets came from the same firearm, but could not determine whether they were fired from the same gun as the shell casings without examining the firearm, which was not recovered. Thus, the comment that the gun used was "possibly" a Smith & Wesson M & P was properly based on testimony and did not present the expert findings in a misleading way.

Defendant also takes issue with the prosecutor's assertion that Moore had said, "I'm sorry [defendant] did this to [Dailey]." He asserts that this was not a fact in evidence and improperly vouched for Moore's testimony. The prosecutor was arguing that Moore's testimony was reasonable, that she did not have any bias against defendant because she had never met him, and that her concern was for her friend, Dailey. During her testimony, the prosecutor asked Moore whether she had "any beef with [defendant]?" She responded, "No. I don't know him. I'm sorry he did this." Defendant objected on grounds that Moore was making a conclusion, and the prosecutor volunteered to strike the comment from the record. The trial court instructed the jury to disregard it. Because the statement had been stricken from the record, the prosecutor's reference to Moore's statement was not based on a fact in evidence. However, the prosecutor's argument that Moore's concern was for her friend and that she was not motivated to testify against defendant because she was biased against him was based on facts of record; the evidence established that Moore and Dailey were friends and that Moore did not know defendant. Thus, the statement was not a reference to evidence not introduced at trial.

Defendant argues, however, that the prosecutor improperly vouched for the veracity of Moore's testimony. A prosecutor may not "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *Bahoda*, 448 Mich at 276. Such commentary could influence the jury to decide the case based on the prosecutor's special knowledge and not on the evidence presented. *People v Bennett*, 290 Mich App 465, 476-477; 802 NW2d 627 (2010), citing *Bahoda*, 448 Mich at 276. Further, the prosecutor may not vouch for a witness's credibility based on the prosecutor's integrity or the prestige of the position. *People v McGhee*, 268 Mich App 600, 633; 709 NW2d 595 (2005). A prosecutor's statement about the credibility of a witness may infringe on the "exclusive province

---

[2] M & P means the military and police line of Smith & Wesson firearms.

of the jury" to determine credibility, particularly given the importance of the prosecutor's position. *People v Erb*, 48 Mich App 622, 631-632; 211 NW2d 51 (1973).

Here, the prosecutor did not state or imply a belief based on his personal knowledge or his position as prosecutor. The prosecutor's argument that the jury should consider Moore's testimony "very reasonable" was based on her testimony, "consider[ed] [] with her brother's testimony and the circumstantial evidence that puts him at that crime." "[A] prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Thomas*, 260 Mich App at 455. The prosecutor may argue from the facts that a witness should be believed. *Id*. Thus, the prosecutor did not impermissibly vouch for the veracity of Moore.

Lastly, defendant asserts that the prosecutor misled the jury when he stated:

> [Defendant's trial counsel] said in his closing that McFadden didn't show because he refused to testify. The judge instructs you and instructed you and will instruct you that he's unavailable. That's why. He's not here. That he's unavailable. And that can mean that he refused to testify. That means maybe he's scared to testify. Maybe he's somewhere else. But you got to follow the judge's instructions.

In closing argument, defense counsel had stated that McFadden "wasn't here today. He testified at the preliminary exam for the sole sake of getting a deal; that is, to have his charges dismissed so he can get out of jail. I'd ask you not to believe a single piece of statement he has to say here today."

Defendant argues that the prosecutor lied by telling the jury that defense counsel had said McFadden "didn't show" and that McFadden was in fact present in court, because he was transported from "lock up" while the jury was excused to inform the trial court that he was not going to testify. Regardless, whether he was or was not present was not the point of either defense counsel's or the prosecutor's comments. Defense counsel appears to have been implying that McFadden refused to testify because he only testified initially to get a deal and no longer had an incentive to testify against defendant. The prosecutor appears to have been implying that there may have been numerous reasons why he was unavailable, including the possibility that McFadden just refused or that he was afraid of defendant. Whether he was or was not physically present was beside the point.

The more valid concern is whether the prosecutor was attempting to demonstrate that defendant had frightened McFadden. There was no evidence that defendant had intimidated McFadden. However, McFadden did testify that he was shot sometime between the shooting on April 25, 2016, and his testimony at the preliminary hearing on May 27, 2016. Because this evidence was read into the trial record, the prosecutor's statement that McFadden might have been scared to testify might be a fair inference. However, any implication, intentional or not, that defendant intimidated McFadden was unwarranted. Nonetheless, any error could have been addressed by a curative instruction. *Callon*, 256 Mich App at 329; *Unger*, 278 Mich App at 235. Moreover, there is no indication that this comment was outcome determinative. Regardless of

the prosecutor's comments, the jury was presented with McFadden's incriminating identification, as well as Moore's, and it was also shown evidence from the video footage of the incident. Given this evidence, it cannot be said the error resulted in the conviction of an innocent defendant or "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Carines*, 460 Mich 750, 763 (1999) (quoting *U.S. v Olanoz*, 507 U.S. 725 (1993)).

Defendant argues that his trial counsel provided ineffective assistance by failing to object to the prosecutor's statements. A counsel's performance is deficient if it fell below an objective standard of professional reasonableness and it was error for the prosecutor to repeat evidence that he agreed to strike. *Jordan*, 275 Mich App at 667. The prosecutor's comments about a Smith & Wesson and Moore's motivation to testify based on her friendship with the victim were proper comments on the evidence. Additionally, the prosecutor's comment about Moore's motivation was not improper vouching. Thus, it is unlikely that any objection to the remarks would have been sustained. Counsel was not ineffective for failing to make a futile objection. *Ericksen*, 288 Mich App at 201.

An objection to the prosecutor repeating Moore's statement that had been stricken from the record might have been meritorious. However, Moore's statement, "I'm sorry he did this" was made in the context of discussing her relationships, specifically that she did not know defendant and did not have conflict with him. Defendant does not develop how the reference to this statement adversely influenced the jury. Counsel's performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667. Because Moore had described to the jury how defendant shot at her vehicle as she drove away and wounded her close friend, it would not have had any import to note that Moore was sorry that defendant shot her friend. Similarly, given the compelling identification testimony in this case, it is not reasonably probable that, but for the failure to challenge the implication that McFadden may have been frightened by defendant, the result would have been different.

Finally, defendant argues that the trial court imposed an unreasonable sentence. Defendant's minimum sentencing guideline range was 135 to 225 months, and he was sentenced to a minimum sentence of 216 months. A sentence that falls within the guidelines is presumed proportionate and must be affirmed on appeal absent a scoring error or reliance on inaccurate information. MCL 769.34(10); *People v Jackson*, 320 Mich App 514, 527; 907 W2d 865 (2017); *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016).[3]

Defendant argues that the trial court should have adjusted the sentence based on his youth. Defendant was 18 years of age at the time of the offenses. However, the cases cited do not hold that a sentence must be reduced or at the lower end of the guidelines range if the

---

[3] We are aware that our Supreme Court has scheduled oral argument and briefing to address the continued validity of MCL 769.34(10). *People v Ames*, 501 Mich 1026; 908 NW2d 303 (2018). However, until a decision from our Supreme Court holds otherwise, we are bound by prior published opinions of this Court. MCR 7.215(C)(2).

defendant is near 18 years old. In *Miller v Alabama*, 567 US 460, 470-473; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the Court concluded that "mandatory life-without-parole sentences for juveniles" constituted cruel and unusual punishment. In *People v Lorentzen*, 387 Mich 167, 181; 194 NW 2d 827 (1972), the Court held that it was cruel and unusual punishment to sentence a 23-year-old to 20 years in prison for possessing marijuana. And in *People v Dipiazza*, 286 Mich App 137, 153-157; 778 NW2d 264 (2009), the Court held that it was cruel and unusual punishment to require an 18-year-old first-time sex offender, who had a consensual relationship with another teen, to register as a sex offender for 10 years despite having completed his requirements as a youthful trainee. Although these cases highlight that the age of the offender can be one circumstance to consider in fashioning a sentence proportionate to the circumstances, they do not mandate a reduced sentence simply because of the offender's age. In the present case the trial court did, in fact, consider and discuss the defendant's youthfulness, stating:

> There is . . . this culture of unlawful carrying of weapons by youth, carrying them, flashing them, boasting about having weapons, and, as this case demonstrates, using them without regard for human life and without regard for the damage that can occur.

In concluding that a "significant punishment is warranted in this case," the trial court considered defendant's youth and involvement in the "gun culture," and emphasized a need to deter the behavior of people who carry guns to threaten and shoot at people. Further, the court considered the fact that defendant "pull[ed] out a gun on a public street and just started firing several times," noting that "society needs to be protected from [defendant]." The offense was severe. When McFadden attempted to leave, defendant responded with life-threatening violence, resulting in catastrophic injury. The sentence was well-reasoned. Most significantly, the 18-year sentence is eight months less than the upper end of the minimum sentencing guidelines and, again, sentences within the guidelines are presumed to be proportionate. *People v Lyons*, 222 Mich App 319, 324; 564 NW2d 114 (1997); *People v Albert*, 207 Mich App 73, 75; 523 NW2d 825 (1994).

Affirmed.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Anica Letica