PEOPLE v McALLISTER

Docket No. 212690. Submitted April 4, 2000, at Detroit. Decided June 20, 2000, at 9:00 A.M. Leave to appeal sought.

Larry L. McAllister was convicted by a jury in the Wayne Circuit Court of assault with intent to commit murder. The court, Thomas E. Jackson, J., sentenced the defendant to twelve to twenty years of imprisonment. The defendant appealed.

The Court of Appeals *held*:

1. Evidence of an anonymous telephone tip identifying the defendant as the assailant of the victim was admitted in error. Such evidence should have been, but was not, admitted solely for the purpose of explaining why the police met with the defendant's mother. MRE 105. However, the error was harmless and does not require reversal because it was not outcome determinative, given that several witnesses identified the defendant as the assailant.

2. The trial court did not abuse its discretion in denying the defendant's motion for a corporeal lineup, given that there was no reasonable likelihood of mistaken identification.

3. The trial court did not clearly err in admitting the identification testimony in court of a witness who had previously identified the defendant in a police procedure that was made suggestive with the showing of only the photograph of the defendant. An independent basis for the in-court identification was established with the witness' testimony that the circumstances of the assault were such that they sufficiently allowed him to identify the defendant even though the defendant, in the witness' opinion, had attempted to alter his appearance.

4. The prosecutor, when questioning prospective jurors regarding their understanding of the presumption of innocence and right to trial, did not impermissibly lead the jurors to equate the defendant with an obviously guilty person.

5. The defendant was not denied due process of law when the trial court refused to address the defendant's claim that the presentence report contained inaccurate information and when the trial court refused the defendant's request for access to letters written to the trial court by the victim and members of the victim's family. Any failure to respond to the alleged inaccuracy in the

presentence report concerning the defendant's employment status was harmless because it would have had no determinative effect on the sentence. The incorrect identification in the presentence report of a prior misdemeanor conviction as a felony has no effect on the scoring of the sentencing guidelines and does not require a rescoring in the absence of a claim by the defendant that the sentence imposed is disproportionate. Denial of access to the letters written by the victim and members of his family did not violate the defendant's right to due process, given that the defendant's inability to respond to ex parte communication was not at issue inasmuch as the content of the letters were cumulative to evidence at trial concerning the psychological effect of the beating on the victim.

6. Reversal of the defendant's conviction is not warranted on the basis of the cumulative effect of the errors or claimed errors of the trial court.

Affirmed.

WHITBECK, J., concurring, stated that the defendant did not sustain his burden of establishing prejudicial error that requires his sentence to be vacated or his conviction to be reversed, that the trial court erred in withholding from the defendant the letters of the victim and his family, but the error does not require reversal, and that our adversarial system of justice requires equal access to the record so as to prevent unfair advantage by one party over another.

1. CRIMINAL LAW — LINEUPS — JUDICIAL DISCRETION.

   A defendant has a right to a lineup where an eyewitness identification has been shown to be a material issue and there is a reasonable likelihood of mistaken identification that a lineup would tend to resolve.

2. CRIMINAL LAW — IDENTIFICATION TESTIMONY — IMPROPER PRETRIAL IDENTIFICATION — INDEPENDENT BASIS.

   An independent basis for the admission of the court testimony of a witness identifying a defendant must be established where the witness previously identified the defendant at an improperly suggestive photographic identification procedure conducted by the police.

3. CRIMINAL LAW — PROSECUTORIAL MISCONDUCT — APPEAL.

   The Court of Appeals, when reviewing allegations of prosecutorial misconduct at a trial, examines the alleged misconduct in context to determine whether it denied the defendant a fair and impartial trial.

4. SENTENCES — PRESENTENCE REPORTS — INACCURACIES.

    A sentencing court's failure to respond to alleged inaccuracies in the
    presentence report may be considered harmless when the alleged
    inaccuracies have no determinative effect on the sentence.

*Jennifer M. Granholm,* Attorney General, *Thomas
L. Casey,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, *Timothy A. Baughman,* Chief of
Research, Training, and Appeals, and *Roberta L.
Wolfe-Bryant,* Assistant Prosecuting Attorney, for the
people.

*Craig A. Daly,* for the defendant.

Before: HOOD, P.J., and GAGE and WHITBECK, JJ.

PER CURIAM. Defendant was convicted, following a
jury trial, of assault with intent to commit murder,
MCL 750.83; MSA 28.278. Defendant was sentenced to
twelve to twenty years' imprisonment, and he appeals
as of right. We affirm.

The victim, John Webster, received a telephone call
from a woman named "Jackie" who was interested in
purchasing his car. The victim and his friend, Eric
Valla, met Jackie and allowed her to test drive the car.
Jackie agreed to buy the car, but indicated that she
needed to obtain additional funds from a friend in a
bar. Jackie drove the car to the bar, parked the car in
the alley behind it, and entered the bar.

Two men were in the alley hitting a baseball with
an aluminum bat. Defendant was carrying the base-
ball bat and approached the car. There were "For
Sale" signs on the car. Defendant asked Webster
about the car and got in the driver's seat. Defendant
got out of the vehicle, and Webster got out of the pas-
senger's side and proceeded to enter the driver's side.
As he entered the car, defendant struck him in the

legs with the bat. Defendant proceeded to beat Webster with the bat. The second man, who had been playing ball with defendant, proceeded to beat Webster with a walking stick or cane. After being threatened by the second man, Valla ran to call for help. There were homes located behind the bar. Two neighbors, Timothy Webb and Dana Arnett, saw the two men beating Webster. The day after the assault, police officer Richard Lucas received an anonymous tip that defendant had committed the offense. Officer Lucas went to the home of defendant's mother and obtained a picture of defendant. Defendant was apprehended approximately one year later in Texas. Before trial, defense counsel took issue with the ability of the eyewitnesses to identify defendant. At trial, Webster, Webb, and Arnett identified defendant as the perpetrator of the assault although they acknowledged that his appearance had changed since the time of the offense.

Defendant first argues that the trial court denied his rights of confrontation and a fair trial by allowing police testimony regarding receipt of an anonymous telephone call identifying defendant as the perpetrator of the assault. We agree that the admission of this evidence was erroneous, but hold that the error was harmless. In *People v Wilkins*, 408 Mich 69, 72-73; 288 NW2d 583 (1980), police were able to charge the defendant with carrying a concealed weapon through the use of an informant's tip. Police officers began to conduct surveillance as a result of the tip and began to follow the defendant as he drove his car. The police attempted to stop the car, but the defendant refused to pull over and threw a shiny object out of the car. The police retrieved the object, an automatic

pistol. At trial, the police testified that the anonymous tip identified the defendant, his clothing, his car, and his location. The prosecution asserted that the substance of the information provided by the anonymous tip was admissible because it was not offered for the truth of the matter asserted. Rather, the evidence was offered to establish the reason that the police took subsequent action. Our Supreme Court explained that, even if such testimony was offered for a purpose other than its truth, it must also be determined what the testimony tends to establish and whether that evidence is probative of a material issue in dispute. The Court concluded that admission of the testimony was improper, even if marginally relevant under MRE 401, because the evidence was not limited to its proper scope as required by MRE 105. *Wilkins, supra* at 73. The Court also held that the prejudicial effect far outweighed the probative value when the jury was provided with testimony regarding the content of a statement of an unsworn informant, the unsworn informant was not produced at trial, and the statement was the *only* evidence to identify the defendant as the perpetrator of the offense.

In the present case, we agree that the admission of the information contained within the anonymous tip should have been limited to explain why police met with defendant's mother. MRE 105. However, we cannot conclude that the prejudicial effect of the substance of the informant's tip far outweighed its probative value. MRE 403. Unlike the *Wilkins* decision, the evidence presented in this case was not limited to statements given to police by unknown witnesses who were never produced in court. Rather, three witnesses were able to identify defendant as the assail-

ant, and a waitress from the bar placed defendant at the scene. Admission of the evidence does not require reversal, *People v Lewis*, 168 Mich App 255, 266-267; 423 NW2d 637 (1988), especially where the erroneous admission of the testimony was not outcome determinative. *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999); *People v Murray*, 234 Mich App 46, 63-64; 593 NW2d 690 (1999).

Defendant next argues that he was denied a fair trial on the basis of the trial court's failure to allow a live lineup. We disagree. The decision to grant the defendant's motion for a lineup lies within the trial court's discretion. *People v Gwinn*, 111 Mich App 223, 249; 314 NW2d 562 (1981). A decision constitutes an abuse of discretion when it is so grossly violative of fact and logic that it evidences perversity of will, defiance of judgment, and the exercise of passion or bias. *People v Gadomski*, 232 Mich App 24, 33; 592 NW2d 75 (1998). A right to a lineup arises when eyewitness identification has been shown to be a material issue and when there is a reasonable likelihood of mistaken identification that a lineup would tend to resolve. *Gwinn, supra.* In the present case, eyewitness identification was a material issue; however, a lineup would not have resolved any "mistaken identification." While defendant takes issue with the identification of Webb and Arnette, who witnessed the crime from a distance of thirty to fifty feet, Webster sat in the vehicle with defendant before the assault and clearly identified defendant as his assailant. Accordingly, the trial court did not abuse its discretion in denying the motion for a lineup.

Defendant next argues that the trial court erred in allowing witness Webb to identify defendant at trial

because there was no independent basis for an in-court identification when Webb was tainted by the examination of a single photograph of defendant. We disagree. The trial court's decision to admit identification evidence is reviewed for clear error. *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). In *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998), our Supreme Court held that improper suggestion in photographic identification procedures may arise when the witness is shown only one person or a group of people in which one person is singled out in some way. In the present case, the procedure itself was suggestive in that Webb was shown only one photograph of defendant. However, Officer Lucas testified that he was unable to locate a "mug shot" photograph of defendant and the only photograph he obtained was that of defendant on a boat. Accordingly, any photographic lineup would also have been impermissibly suggestive in that it would have singled out defendant shown on a boat. However, when a pretrial identification has been improperly conducted, an independent basis for any in-court identification must be established. *Id.* at 114-115. In the present case, Webb testified that there was an independent basis for his identification because he could not recall ever being shown a photograph of defendant by police. Rather, Webb testified that the distance, daylight, and duration surrounding the circumstances of the assault was sufficient to allow him to identify defendant, who had in Webb's opinion, attempted to alter his appearance at the time of trial. *People v Kachar*, 400 Mich 78, 83; 252 NW2d 807 (1977). Accordingly, we cannot conclude that the trial court's

decision to admit identification evidence was clearly erroneous. *Kurylczyk, supra.*

Defendant next argues that he was denied a fair trial when the prosecutor denigrated the presumption of innocence and right to trial. We disagree. When reviewing allegations of prosecutorial misconduct, we examine the alleged misconduct in context to determine whether it denied the defendant a fair and impartial trial. *People v Reid*, 233 Mich App 457, 466; 592 NW2d 767 (1999). In the present case, there was no objection to the alleged improper statement. Review of unpreserved allegations of prosecutorial misconduct is foreclosed unless no curative instruction could have removed any undue prejudice to defendant or manifest injustice would result from failure to review the alleged misconduct. *Id.* Defendant's contention, that the prosecutor led the jury to equate defendant with an obviously guilty person, is without merit. The prosecutor was merely questioning prospective jurors regarding their knowledge of the presumption of innocence and the right to trial.

Defendant next argues that he was denied due process of law at sentencing when the trial court refused to respond to challenges to inaccurate information contained in the presentence investigation report (PSIR) and refused to disclose letters addressed to the court by the victim and his family members. We disagree. Defendant has the right to the use of accurate information at sentencing, and a court must respond to allegations of inaccuracies. *People v Daniels*, 192 Mich App 658, 675; 482 NW2d 176 (1992). However, when the alleged inaccuracies would have no determinative effect on the sentence, the court's failure to respond may be considered harmless error. *Id.* In the

present case, defendant challenged the information contained in the PSIR that stated that defendant was unemployed when, in fact, he was employed as a part-time truckdriver. This alleged inaccuracy has no effect on the sentence imposed, and any failure to respond was harmless error. Defendant also asserted that the PSIR incorrectly identified a prior conviction as a felony when defendant was only convicted of a misdemeanor offense. We are not required to rescore the variables for prior record to determine if they were correctly applied unless the resulting sentence was disproportionate. *People v Raby*, 456 Mich 487, 498; 572 NW2d 644 (1998). Defendant does not question the proportionality of his sentence. In any event, the scoring of the prior conviction was included in PRV 10 as ten points. Assuming that defendant was only convicted of a misdemeanor offense, the removal of the ten points has no effect on the scoring of the guidelines. We are convinced, after reviewing the trial court's reasons for the sentence imposed, that a remand on this issue would be a waste of judicial resources.

Finally, with regard to the sentencing issue, defendant contends that he was entitled to examine the letters submitted to the court by the victim and the victim's family. Defendant concedes that there is no Michigan authority on point, but relies on *United States v Hayes*, 171 F3d 389 (CA 6, 1999). In *Hayes*, it appeared that the court had relied on victims' letters where the sentence imposed was the maximum allowed and the effect of the letters was prominent in the trial court's explanation of the sentence. The *Hayes* court held that the error, while unpreserved, required reversal where the trial court relied on ex

parte communications in sentencing, but failed to provide notice and the contents of the communications to the defendant. In the present case, the trial court merely acknowledged that it had received letters from the victim and the victim's family regarding the effect that the injuries had on the victim. There was no issue of defendant being unable to respond to ex parte communications. The trial court noted that the information was relevant for purposes of scoring Offense Variable 13, addressing psychological injury to the victim, with five points. Contrary to defense counsel's assertion, the trial court did not ask defendant to respond to the content of the letters, but, rather, asked defense counsel to respond to the scoring of this variable. Also contrary to defense counsel's assertion, the content of the letter[1] in dispute was disclosed. The prosecutor stated that Webster's father had written a letter addressing the psychiatric treatment his son received and the medications that he had to take as a result of the attack. In any event, Webster appeared at sentencing and gave an oral statement acknowledging the psychological effect of the beating, which had required treatment at a psychiatric hospital. Furthermore, his medical records evi-

---

[1] After affording defendant his right of allocution, the court gave the prosecutor the opportunity to address the court. The prosecutor asked whether the trial court had received a letter from Webster's father. At that time, the trial court acknowledged receipt of the father's letter as well as a letter from an aunt. The trial court did not delineate the contents of these letters or indicate that the letters had any bearing on the sentencing determination. After Webster spoke regarding his psychiatric condition, the prosecutor stated that the information regarding his psychiatric hospitalization was included in the letter written by Webster's father. At that time, the trial court addressed the psychological effect as it applied to the guideline variables. While defendant refers to the prejudice of "letters," there appears to be only one letter that arguably had any bearing at sentencing. Accordingly, we will address the specifics of that letter only.

dencing the brutality of the attack and its effect were admitted at trial. Thus, the content of the disputed letter was cumulative to evidence that was presented at trial and to the oral statement by Webster at sentencing. Accordingly, the concerns expressed in *Hayes*, that the defendant would be unable to respond to ex parte communications, were simply not present in this case.

We also note that the *Hayes* court erroneously classified the letters received from victims as evidence. *Hayes*, *supra* at 393. We are confident that trial judges of this state are able to separate the evidence at trial from the subjective requests of victims or their family members as stated in letters submitted to the court.[2] Additionally, our Legislature has determined

---

[2] The *Hayes* holding also cited two underlying federal decisions, *United States v Burger*, 964 F2d 1065 (CA 10, 1992), and *United States v Curran*, 926 F2d 59 (CA 1, 1991). In *Curran*, the defendant, a stockbroker, pleaded guilty of a scheme to defraud friends and clients. Before sentencing, the district court received numerous letters from victims and third parties, including the defendant's family members. The letters were not made a part of the PSIR, but the district court delivered the letters to the probation officer, unbeknownst to the defendant. In sentencing the defendant, the district court referenced one of the letters and sentenced the defendant to a more severe sentence than the government recommended. *Curran*, *supra* at 60-61. Likewise in *Burger*, the defendant pleaded guilty of conspiracy and misuse of a line of credit. The district court received two ex parte letters from the Chairman of the FDIC and another letter from the FDIC. The defendant argued that the district court had to be recused because of the consideration of ex parte letters. The appellate court declined to order recusal of the district court. However, the matter was remanded because the probation department had relied solely on the letters for determining the amount of restitution. *Burger*, *supra* at 1072. The *Hayes* court adopted those decisions, but failed to state whether the defendant had been convicted following a jury trial or a guilty plea. In cases where the defendant pleads guilty, the danger exists that the sentencing court may rely on subjective letters in determining the appropriate sentence. However, we are confident that limitations on the sentencing court's discretion, which include the four goals of sentencing, the principle of proportionality, and the application of sentencing guidelines coupled with the sentencing court's knowledge that the letters are

the contents of the PSIR and has given victims the discretion to determine whether their victim impact statements may be included in the PSIR at the request of the victim. MCL 771.14(2)(b); MSA 28.1144(2)(b), MCL 780.764; MSA 28.1287(764). Any requirement to the contrary should be mandated by the Legislature.[3]

Lastly, defendant argues that the cumulative effect of errors requires reversal. As discussed above, any

---

subjective opinions by the victims seeking to have the convicted punished for the harm incurred, are sufficient protections to ensure that a defendant is not sentenced in response to emotional pleas by victims. See *People v Steele*, 173 Mich App 502, 504; 434 NW2d 175 (1988).

[3] While the concurring opinion concludes that there would be no harm as a result of the disclosure of letters, it appears that procedural complications will arise from the lack of regulation of the process. The sentencing court may have to hold a "presentencing" hearing or conference in order to effectuate an exchange of letters received by the court, the prosecutor, the defense attorney, and the probation officer. A deadline for receipt and exchange may have to occur when the defendant's crime or crimes have caused harm to a substantial number of victims or invokes public outcry. Perhaps, this type of hearing could be avoided by ordering that all interested parties submit letters to the probation department before sentencing, and the probation department could incorporate the letters into the PSIR, a process that was ordered in *Hayes, supra*. However, we note that the PSIR follows the defendant to prison, MCL 771.14(8); MSA 28.1144(8), and may have ramifications for purposes of security classification and may be considered by parole officials at the appropriate time. To avoid any consequence as a result of letters submitted with the PSIR, even when the sentencing court acknowledges that the letters will not be given consideration, the defendant will seek to have letters stricken from the PSIR. See *People v Grove*, 455 Mich 439, 477; 566 NW2d 547 (1997). We also note that after receipt of the letters, the next issue becomes what measures the defendant may take to refute the content of letters. For example, in the present case, the victim's father submitted a letter regarding the effect that the beating had on the victim. Would defendant be entitled to call his father to the stand for sworn testimony regarding the victim's pre- and post-beating state? Alternatively, would defendant be entitled to call an expert to refute the claim that the victim's beating caused a head injury that will affect the victim? The logical consequence of receipt of letters would be requests for evidentiary hearings to refute the allegations contained therein. Simply put, we cannot and will not impose administrative requirements that will burden sentencing courts. Defendant's request for receipt of letters should be directed to the Legislature.

errors or arguable errors were of little consequence at defendant's trial. *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999). Thus, reversal of defendant's conviction is not warranted on the basis of cumulative error.

Affirmed.


Whitbeck, J. (*concurring*). I concur in the result the lead opinion reaches. Other than structural defects in the judicial process, only prejudicial error requires vacating a sentence or reversing a criminal conviction. See MCL 769.26; MSA 28.1096; *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). In this case, McAllister did not sustain his burden of showing prejudicial error.

As the lead opinion states, the trial court did not allow defense counsel to examine the letters the victim's family wrote to the trial court before the sentencing hearing. McAllister has not shown how this decision affected the sentence the trial court imposed. In that way, this case differs from *United States v Hayes*, 171 F3d 389 (CA 6, 1999). In *Hayes*, the Sixth Circuit Court of Appeals vacated the defendant's sentence because the trial court explicitly relied on letters from the defendant's victims to impose sentence, even though it did not permit the defendant or defense counsel to read those letters.

I write separately to express my belief that the trial court here erred in withholding the letters, even if that error does not require us to vacate McAllister's sentence. The core concept of due process requires a trial court to share the materials in the record with all

parties in most cases.[1] Our system of justice makes parties adversaries, leaving the trial court to act as a neutral arbiter. When a trial court gives or allows one party an advantage over another, it upsets the precarious balance inherent in an adversarial system.

Some may dispute the adversarial system's wisdom and efficiency. In it, the parties with the most information, data, evidence, or other factual insight may often obtain an advantage over an unknowing party. For instance, without an open record, one party may lose the opportunity to point out the opposing party's misrepresentation or misapprehension of the facts. This gives the party with the access to the information an unfair advantage when framing the legal issues in the case on the basis of the alleged facts. Equal access to the record prevents this unfair advantage and provides a level of assurance that those who make decisions, whether judges or juries, know enough about any matter in order to reach the result the law requires. Surely, we do not, and likely cannot, serve justice by preventing equal access to the record.

I am willing to concede that access to otherwise undisclosed materials in the record is less important after the judge or jury finds a defendant guilty of the charged offense. However, I do not concede that undisclosed materials are always, or even regularly, inconsequential to a postverdict decision.

---

[1] Due process may not require disclosure in every case because, for example, the court rules permit in camera, ex parte review of materials in some situations. See, e.g., MCR 6.201(C)(2) (a trial court may review materials otherwise protected by privilege in an in-camera proceeding to determine if a defendant may have access to them because they are "necessary to the defense").

In this case, the victim's family wrote letters to the trial court. We can only speculate about the letters' contents because they do not appear in the record.[2] However, it is self-evident that individuals who write to a trial court before sentencing do so with the explicit aim of affecting the sentence imposed. Whether the letter writer hopes to influence the sentencing judge's opinion of the defendant and the circumstances of the case in a way that encourages leniency or severity depends solely on that person's interests. That aim is not futile because, even with guidelines in place, trial courts typically retain some measure of discretion while sentencing and small details may sway a judge one way or another. An attempt to influence the trial court's decision on the basis of evidence not introduced at trial is proper, even if the individuals who introduce it are not parties to the case. See Const 1963, art 1, § 24. However, a trial court "must" permit the defendant "an adequate opportunity to rebut or explain" other facts introduced for the purpose of sentencing. *People v Ewing (After Remand)*, 435 Mich 443, 446, 474; 458 NW2d 880 (1990).

Ultimately, how a trial court exercises its discretion is of utmost importance to the defendant, whose liberty is at stake. It is crucial that a trial court give a defendant a fair opportunity to examine previously undisclosed materials in the record, such as letters encouraging a harsh sentence, so that the defendant

---

[2] An open record has a separate beneficial, if collateral, effect. When the parties are able to dispute the facts of the case fully, then they help create a complete record, facilitating appellate review. See generally *Smith v Crime Victims Compensation Bd*, 130 Mich App 625, 628-629; 344 NW2d 23 (1983).

has an opportunity to counter or clarify any factual assertions. Although the trial court in this case did not, apparently, show the letters to the prosecutor, the prosecutor had evidently already seen the letters or knew about their contents. Accordingly, solely within the context of this case, the trial court's decision not to disclose the letters appears to have had relatively little effect on the prosecutor even though there may be other cases in which nondisclosure works against a prosecutor's interests. However, whether nondisclosure favors a prosecutor over a defendant, or the converse, is irrelevant when it comes to fundamental fairness.

I see no danger in disclosing these sorts of letters to the parties and conclude that the trial court erred in not disclosing the letters to McAllister. Yet, as noted above, McAllister has not shown that this error was prejudicial. The trial court's error was, therefore, harmless.