*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 17, 2021

Plaintiff-Appellee,

v

No. 349919
Wayne Circuit Court
LC No. 19-001001-02-FC

DAMIAN ANTHONY WILLINGHAM,

Defendant-Appellant.

Before:  K. F. KELLY, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a).  The trial court sentenced defendant to a prison term of 30 months to 10 years.  For the reasons stated in this opinion, we affirm defendant's conviction and sentence but remand for the limited purpose of having the trial court amend defendant's presentence investigation report (PSIR).

## I.  BACKGROUND

This case arises from defendant and his codefendant, Ricky Richett, attacking Thomas Beaudrie and his brother Michael Beaudrie in the parking lot of Champion's Sports Grill on May 6, 2018.  The altercation began when Thomas drunkenly stumbled into defendant when exiting the bar at closing time.[1]  Defendant became enraged and charged after Thomas, saying something along the lines of "I'm going to f*** him up."  Curious about the commotion, a crowd started to form.  As defendant went to confront Thomas, the woman defendant was with unsuccessfully tried to pull him back.  One witness saw defendant punch Thomas in the face, and Michael went to

---

[1] Guyontai Gray-Rice, the witness who testified to the initial interactions between defendant and Thomas, did not actually identify defendant and Thomas but referred to them as the "Mexican or Hispanic looking guy" and the "drunk guy," respectively.  Viewing the evidence in a light most favorable to the prosecution, there is no real dispute that Gray-Rice was referring to defendant and Thomas.

break up the fight. Trying to defuse the situation, Michael said something along the lines of "not wanting any trouble" and "just wanting to go home." In response, Richett struck Michael in the face. Michael toppled backward, and the back of his head hit the pavement. As Michael lay unconscious on the pavement, Richett either stomped or kicked Michael. First responders later took Michael to the hospital where he died from "multiple blunt force trauma impacts with complications."

Multiple witnesses testified that after Michael had been knocked out, defendant continued to attack Thomas. Richett joined defendant, and the two punched Thomas until he fell to the ground. Once Thomas was on the ground, defendant and Richett continued to punch and kick Thomas, who curled into a fetal position as the pair beat him. One witness testified that he never saw Thomas throw a punch. Richett and defendant eventually left the scene as the sirens of approaching police cars sounded.

Facebook messages between defendant and an acquaintance who was present for the altercation, Joshua Clawson, were admitted into evidence. The two briefly discussed the fight, with defendant saying to Clawson, "I was on dude's a**." Later, after news of Michael's death broke, Clawson gave defendant a phone call and told him that Michael had died. Clawson testified that defendant sounded "happy" about it. In text messages with his brother a day or two after the incident, defendant said, "Yeah, I'm good. Period. And if some way, in how, I go away, that's when you need to be there, period. L.O.L." During the conversation, defendant also said that "[t]hey can't prove it, brotha, period," and "[n]obody can prove anything."

About five or six days after the events at Champion's, Thomas sought medical treatment for his injuries. He reported experiencing headaches, memory loss, brain fog, and pain all over. According to his medical records from that day, he had marks on his forehead, two black eyes, a cut underneath his eye, ringing in his ears, lumps all over his head, and bruising all over his chest. He had no memory of what happened the night of May 5, 2018, or during the early morning hours of May 6, 2018.[2] As of trial, Thomas had been seeing a psychiatrist for depression, grief, and posttraumatic stress disorder to cope with psychological trauma from the incident.

The prosecution charged defendant and Richett with open murder, MCL 750.316, and assault with intent to murder, MCL 750.83. Defendant and Richett were tried together. The jury convicted Richett of second-degree murder, MCL 750.317, and AWIGBH. The jury acquitted defendant of second-degree murder, but convicted him of AWIGBH as to Thomas. At sentencing, defendant's minimum guidelines sentencing range was 19 to 30 months' imprisonment. Defendant requested the trial court sentence him at the low end of the minimum guidelines sentence range—19 month's imprisonment. Taken aback by the level of cruelty that defendant inflicted on Thomas, the trial court denied defendant's request. The trial court sentenced defendant to a minimum of 30 months' imprisonment. Defendant appealed by right.

While this case was pending on appeal, defendant moved the trial court to correct an invalid sentence. Defendant argued that the trial court had sentenced him on the basis of inaccurate information. According to the requirements laid out in MCL 791.234a, defendant argued, he was

---

[2] At trial, he still had no memory of what occurred.

eligible for Special Alternative Incarceration (SAI) boot camp. But he noted that his PSIR stated that he was not eligible. Therefore, defendant requested that the trial court revise his PSIR and resentence him to SAI boot camp. The trial court denied defendant's motion and declined to determine whether defendant was eligible for SAI boot camp. Instead, the trial court reasoned that, regardless of whether defendant were eligible for SAI boot camp, it still would have sentenced defendant to a minimum of 30 months' imprisonment. Therefore, the trial court determined it need not determine whether defendant were eligible for SAI boot camp, as this information had no effect on the court's sentence.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution introduced insufficient evidence to convict him of AWIGBH. We disagree.[3]

"AWIGBH is a specific intent crime." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). The elements of AWIGBH are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

A rational trier of fact could have concluded beyond a reasonable doubt that defendant assaulted Thomas. Guyontai Gray-Rice testified that he saw an individual matching defendant's description punch Thomas, and Clawson and Chelsea Olson each testified that they saw defendant punch Thomas and then kick Thomas while he was on the ground. Defendant notes that a few witnesses testified that they did not see who started the fight and that Brandon Garza testified he saw someone matching Thomas's appearance pull defendant out of a vehicle as he attempted to leave the scene *after* the initial skirmish. To the extent defendant argues that this evidence supports a claim of self-defense, this argument lacks merit. First, the trial court declined to give a self-defense instruction, concluding that it was not supported by the evidence. Defendant does not appeal this ruling. Even assuming the evidence defendant cites supports his self-defense theory, the prosecution had no duty to negate every reasonable theory consistent with innocence. See *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). So, to the extent one could infer from the evidence below that defendant was acting in self-defense, the jury was free to reject this inference. And considering the uncontradicted witness testimony that defendant was the aggressor here, the jury was right to do so.

---

[3] In a criminal case, due process requires that the prosecution introduce evidence sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. See *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). We review a challenge to the sufficiency of the evidence by reviewing the evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. See *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). Inconsistencies in witness testimony and issues of witness credibility are immaterial. See *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). It is not this Court's role to assess the credibility of these witnesses or to decide what weight to assign their testimony—that is the fact-finder's role. *Id*.

Next, a rational trier of fact could have concluded beyond a reasonable doubt that defendant intended to inflict great bodily harm.

An actor intends to inflict great bodily harm when that actor intends "to do serious injury of an aggravated nature." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012). Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is enough to sustain a conviction. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). And because this Court presumes that "one intends the natural consequences of one's acts," the trier of fact may consider the nature and extent of a victim's injuries when determining whether a defendant intended to inflict great bodily harm. *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013), abrogated on other grounds by *People v Barrera*, 500 Mich 14; 892 NW2d 789 (2017).

There was ample evidence from which a rational jury could infer defendant intended to inflict great bodily harm on Thomas. The trial witnesses painted a picture of a brutal attack. According to Olson and Clawson, even after Thomas had collapsed to the ground, defendant continued to punch and kick Thomas. As defendant beat Thomas, Thomas laid in the fetal position, desperately trying to protect himself. After defendant finished, Thomas emerged bruised and bloody. He had two black eyes, a cut under his eye, ringing in his ear, lumps all over his head, and bruising all over his chest—still almost a week after the attack. Also, revealing his consciousness of guilt, defendant fled the scene of the crime as soon as he heard sirens.

In sum, there was sufficient evidence adduced at trial to sustain defendant's conviction of AWIGBH.

## III. SENTENCING ERRORS

Defendant also argues that the trial court abused its discretion by not sentencing him to SAI boot camp. We again disagree.[4]

Defendant first argues his PSIR should be corrected to state that he is eligible for SAI boot camp. We agree that defendant's PSIR needs to be amended, but we disagree that his PSIR should be amended to state that he is eligible for SAI boot camp.

A defendant has "the right to the use of accurate information at sentencing." *People v McAllister*, 241 Mich App 466, 473; 616 NW2d 203 (2000). When a sentencing court challenges the accuracy of information in the PSIR, the "court has a duty to resolve the challenge." *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009), citing *People v Grant*, 455 Mich 221,

---

[4] We review for an abuse of discretion whether a trial court properly imposed a sentence that was proportionate to the offender and offense. See *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). We also review for an abuse of discretion a sentencing court's response to a defendant's claim that his PSIR contains inaccuracies. *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). A court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *Id*.

233-234; 565 NW2d 389 (1997). If a sentencing court finds that challenged information is inaccurate or irrelevant, it must correct or strike from the report. *Waclawski*, 286 Mich App at 690; MCL 771.14(6); MCR 6.425(E)(2)(a). If the court disregards the challenged information when fashioning its sentence, the court effectively determines that the challenged information is irrelevant and the defendant is entitled to have the information struck from the PSIR. *Waclawski*, 286 Mich App at 690. If the sentencing court has not struck inaccurate information from the PSIR, "the remedy is to remand for the limited purpose of correcting the PSIR." *People v Spanke*, 254 Mich App 642, 650; 658 NW2d 504 (2003), overruled on other grounds *People v Barrera*, 500 Mich 14; 892 NW2d 789 (2017).

Defendant's PSIR states that "defendant was screened for SAI and deemed ineligible." Defendant argued to the trial court that this was inaccurate, but the court declined to conclude whether this was the case. Instead, the court found that, whether this information was accurate or not, it would have imposed the same sentence regardless.

Even though the trial court ultimately determined that the information defendant challenges was irrelevant, that information was in all likelihood accurate. MCL 791.234a provides requirements that a defendant must meet to be eligible for consideration for placement in SAI boot camp. See *People v Krim*, 220 Mich App 314, 318-319; 559 NW2d 366 (1996); MCL 791.234a(2) and (3). One of these requirements is that "[t]he prisoner is otherwise suitable for the program, as determined by the department." MCL 791.234a(2)(g). Here, assuming for the sake of argument that defendant meets all the other requirements under MCL 791.234a, defendant has not shown that the Department of Corrections (DOC) determined he was otherwise suitable for the SAI boot camp program. Without any factual basis, defendant assumes that the DOC found he was eligible and that the probation agent failed to recognize this in the PSIR. But as the prosecution noted in its response to defendant's motion to invalidate his sentence, the DOC does not consider as eligible for SAI boot camp those candidates with more than a 0 to 12 month guidelines range. Defendant's minimum sentencing guidelines range was 19 to 30 months' imprisonment, and so it appears that defendant was in fact ineligible for SAI boot camp.

In any event, the trial court concluded that the challenged information was irrelevant, and therefore the court should have struck it from the PSIR. Accordingly, we remand for the sole purpose of striking the line in the PSIR that defendant is ineligible for SAI boot camp. But because the trial court did not rely on the challenged information in fashioning its sentence, resentencing is unnecessary. See *People v Harmon*, 248 Mich App 522, 533; 640 NW2d 314 (2001).

As for whether the trial court abused its discretion by sentencing defendant to a prison term rather than to SAI boot camp, sentences must adhere to the principle of proportionality, which "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). A sentence within the range recommended under the advisory guidelines is presumptively proportionate. See *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000). See also *People v Steanhouse*, 322 Mich App 233, 257 n 3; 911 NW2d 253 (2017), rev'd in part on other grounds 504 Mich 969 (2019).

Defendant has offered no argument as to why SAI boot camp would be more proportionate to the magnitude of his crime rather than imprisonment and fails to define any unusual circumstances. Defendant simply contends that SAI boot camp would be more favorable to him because he would learn decision-making skills and would obtain the tools necessary to obtain a General Educational Development certificate. Also, the record reveals that the trial court imposed a sentence appropriately tailored to the circumstances of defendant and his crime. As the trial court noted, this was not a typical bar fight. In fact, the record reveals that there was in reality no "fight" at all. With the help of Richett, defendant overpowered Thomas and beat him to the ground. Once Thomas was on the ground, defendant did not stop. He continued to kick and punch Thomas, inflicting wounds Thomas still suffers from to this day. Under these circumstances, defendant has not overcome the presumption that his within-guidelines sentence was proportionate.

## IV. CONCLUSION

We affirm defendant's conviction and sentence. But because the trial court determined the information in the PSIR about defendant's SAI boot camp eligibility is irrelevant, we remand for the limited and sole purpose of having the trial court strike that information from the PSIR.

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle

-6-