*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT LOUIS PRANGE III,

        Defendant-Appellant.

UNPUBLISHED
March 7, 2024

No. 365009
Kalamazoo Circuit Court
LC No. 2022-000033-FC

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

Defendant appeals by right his jury conviction of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (victim under 13 years old and accused over 17 years old). The trial court sentenced defendant to 25 to 40 years in prison. Defendant argues on appeal that (1) the prosecution engaged in misconduct, denying defendant a fair trial; (2) defense counsel was ineffective at trial; and (3) defendant's due-process rights were violated by an inaccurate presentence investigation report (PSIR), which included challenged claims that the trial court agreed to not consider at trial. We affirm.

## I. BASIC FACTS

This case arose when the victim disclosed an incident when defendant made her follow him to his bedroom and eat liquid chocolate off his penis when she was having a sleepover with the defendant's son. The victim repeatedly stated that this abuse happened on two separate occasions. The victim was approximately five years old when the abuse occurred.

Initially, the prosecution filed two CSC-I charges against defendant, one for each allegation of sexual abuse. However, at the beginning of trial, the prosecution requested that the second charge, which concerned an incident of sexual abuse after the charged offense, be dismissed because the victim seemed unsure as to whether the subsequent incident actually took place. The second charge was dismissed, and the parties agreed that defense counsel would be permitted to inquire into whether the victim originally disclosed two incidents of sexual misconduct or just one incident.

-1-

According to witnesses, the first person to hear about the abuse was the victim's stepmother. About five years after the abuse occurred, the victim told her stepmother that defendant made the victim suck chocolate off his penis. The victim then retracted her statement, insisting that it had all been a dream. However, the victim later retracted her retraction and confirmed that her initial disclosure was true. During the disclosure, the victim only mentioned one incident of abuse. The stepmother spoke with the victim's mother about the disclosure.

The victim then disclosed the incident to her mother and father. She told them that the incident occurred during a sleepover with defendant's son, whom she was friends with. The victim said that defendant came into his son's room where she was sleeping, woke her up, told her to be quiet, and led her upstairs to his bedroom. Defendant then put liquid chocolate on his genitals and told the victim to suck it off. The victim admitted to her parents that she falsely recanted her disclosure to her stepmother because she did not want defendant's son to get into trouble. The victim said that the same abuse occurred again on a later occasion.

After the victim's disclosure to her parents, her mother filed a police report. The mother took the victim to the Children's Advocacy Center (CAC) for an interview. The CAC employee who interviewed the victim testified that, during the interview, the victim told her about how defendant woke her up and took her to his room. The victim stated that defendant pulled his pants and underwear down and put Nutella on his penis, and told the victim to lick the Nutella off. The victim told the employee about a second incident of sexual abuse, during which defendant again lured the victim into his bedroom and told her to eat chocolate off his penis. However, unlike the first incident, the victim refused to comply. The two incidents of abuse occurred during the same summer. The victim also told the employee that, during both incidents, only she, defendant's son, and defendant were present in defendant's home.

Approximately one month after the victim's interview, her mother took her to a medical doctor. The doctor testified that, at the victim's request, she examined the victim's mouth for sexually transmitted diseases. Despite the victim's lack of diseases or injuries, the doctor concluded that the victim had suffered sexual abuse.

At trial, the victim confirmed that the first incident of abuse occurred when she was five years old and in kindergarten. She confirmed that she had been sleeping at defendant's house at the time. She testified that defendant came into his son's bedroom where she was sleeping, woke her up, and brought her upstairs to his room. Defendant then pulled down his pants and underwear and put chocolate from a jar on his genitals. Defendant made the victim suck the chocolate off his genitals. The victim initially testified that defendant abused her in the exact same manner a second time. However, the victim then admitted that she was unsure if the second incident actually occurred.

The victim further affirmed that, during the year before the trial, she went to a park with her stepmother and accidentally disclosed the abuse during a conversation. The victim admitted that she recanted her statement to her stepmother. The victim also confirmed that she subsequently informed her mother about defendant's sexual abuse. The victim could not explain why she waited five years to disclose defendant's abuse to anyone.

The jury convicted defendant of one count of CSC-I.  During sentencing, defense counsel objected to the information in the PSIR that referred to the uncharged incident of sexual abuse. The trial court stated that it had crossed out this information in the PSIR, and noted that no evidence of a subsequent sexual-abuse incident had been admitted at trial.  Defendant now appeals.

II.  ANALYSIS

A.  PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecution engaged in prosecutorial misconduct by eliciting testimony concerning the uncharged incident of sexual abuse.  We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction."  *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).  Defense counsel never objected to the prosecution's questions regarding the uncharged incident of sexual abuse and never proposed a curative instruction. Therefore, this issue is not preserved for appellate review.  We review unpreserved constitutional errors for plain error affecting substantial rights.  *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013).  An unpreserved claim of prosecutorial misconduct will not warrant relief unless the prejudicial effect was so great that it could not have been cured by a curative instruction. See *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

A prosecutor must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935).  It remains a prosecutor's duty to use every legitimate means to bring about a just outcome.  See *id*.  The test of prosecutorial misconduct is whether a defendant was denied his or her constitutional right to a fair and impartial trial.  *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).  "The defendant bears the burden of demonstrating that such an error resulted in a miscarriage of justice." *Id*.  A prosecutor violates a defendant's right to a fair trial when he or she injects issues into a case broader than a defendant's guilt or innocence.  *People v Bahoda*, 448 Mich 261, 284; 531 NW2d 659 (1995).  However, a prosecutor may introduce evidence that he or she legitimately believes will be accepted by the trial court.  *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999).  Therefore, a claim of prosecutorial misconduct cannot be predicated on a prosecutor's good-faith effort to admit evidence.  *Id*. at 661.

When a case's outcome hinges upon a minor witness's credibility, it may be proper for a prosecutor to inquire into additional uncharged offenses committed by the defendant, particularly in the context of sexual abuse.  See *People v DerMartzex*, 390 Mich 410, 414-415; 213 NW2d 97 (1973).  In *DerMartzex*, *id*. at 412, the defendant was on trial for assault with intent to rape the victim, a minor girl.  The Michigan Supreme Court stated that, in most statutory rape cases, the central issue is the victim's credibility.  *Id*. at 414.  Typically, sexual intercourse is the culmination of prior acts of abuse.  *Id*. at 415.  Limiting a victim's testimony to the charged offense would seriously undermine the victim's credibility in the eyes of the jury.  *Id*. at 414-415.  The Court also stated that, whether the testimony's probative value is substantially outweighed by its prejudicial effect should be left to the trial court's discretion.  *Id*. at 415.  A court may bar evidence of other crimes when it has determined that the evidence's probative value "is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or

-3-

innocence." *Id*. at 413. The evidence's probative value outweighs this disadvantage when the "crime charged is a sexual offense and the other acts tend to show similar familiarity between the defendant and the person with whom he allegedly committed the charged offense." *Id*. In light of these facts, and the fact that the defendant never asked the trial court to exercise its discretion in such a manner, the Court held that the victim's testimony was permissible. *Id*. at 415,

However, in *People v Jones*, 417 Mich 285, 285-286, 288; 335 NW2d 465 (1983), the Michigan Supreme Court limited the scope of *DerMartzex* to uncharged offenses committed against the same victim. The Court concluded that "[p]rior sexual acts between the defendant and persons other than the complainant are not part of the principal transaction." *Id*. at 289-290. Therefore, courts should not permit evidence of other incidences of sexual abuse committed by a defendant when the additional offenses were committed against different victims. See *id*. at 290. However, an exception to the *Jones* limitation applies when the prosecution attempts to admit additional instances of sexual abuse as other-acts evidence. See MCL 768.27a; MRE 404(b); *People v Watkins*, 491 Mich 450, 467-477; 818 NW2d 296 (2012). Because the prosecution in this matter did not admit the subsequent abuse testimony as other-acts evidence, we decline to address whether the testimony would have been admissible as other-acts evidence. However, the prosecution elicited evidence of the uncharged sexual-abuse incident for a proper purpose, namely, to bolster the victim's credibility. See *DerMartzex*, 390 Mich at 414-415.

## 1. THE VICTIM'S CREDIBILITY

Evidence of uncharged offenses may be admissible if the evidence's "probative value outweighs the disadvantage where [the] crime charged is a sexual offense and the other acts tend to show similar familiarity between the defendant and the person with whom he allegedly committed the charged offense." *Id*. at 413. In this case, the uncharged offense was a sexual offense and occurred under circumstances identical with those surrounding the charged offense. Both offenses involved the same victim, meaning that the *Jones* limitation did not apply. See *Jones*, 417 Mich at 289-290. By inquiring into the uncharged incident of sexual abuse, the prosecution's purpose had been to establish a pattern of consistency between the victim's in-court and out-of-court disclosures of the abuse. The victim's credibility remained vital to this case's outcome because she was the only firsthand witness of the abuse other than defendant. Rather than diverting the jury from "an objective appraisal of the defendant's guilt or innocence," the prosecution's inquiries focused the jury's attention on evidence essential to determining defendant's guilt or innocence. *DerMartzex*, 390 Mich at 413. Moreover, prosecutors may elicit testimony of subsequent acts of sexual abuse between a defendant and a victim to bolster a victim's credibility. See *People v Puroll*, 195 Mich App 170, 171; 489 NW2d 159 (1992). Therefore, defendant has failed to show that the prosecutor committed prosecutorial misconduct when it elicited testimony of the uncharged offense at trial.

## 2. PREJUDICE AGAINST DEFENDANT

Defendant also contends that he never had the opportunity to inquire into whether the victim initially disclosed one or two incidents of sexual abuse. He then opines that, by injecting questions of the uncharged abuse at trial, the prosecution improperly prejudiced the jury against him. Defendant has provided no legal authorities to support his argument.

At the trial's outset, defendant faced two charges of CSC-I, which the prosecution and the trial court reduced to one charge because of the uncertainty surrounding the uncharged offense. In other words, defendant had forewarning that the topic of the second incident of abuse could arise at trial. Additionally, the defense opened the door to these questions at trial when it asked the victim's mother if the victim mentioned a subsequent incident of sexual abuse during her conversation with the victim. The defense again opened the door when it asked the victim's stepmother on cross-examination what the victim disclosed to her regarding the abuse. This open-ended question enabled the prosecution to ask the stepmother on redirect how many times defendant abused the victim. Besides opening the door for the prosecution's allegedly prejudicial questions, the defense's questions indicate that it had been fully prepared to address the uncharged abuse at trial and that it had adequate notice of the uncharged abuse beforehand. Lastly, given the victim's uncertainty surrounding the uncharged abuse, it stands to reason that this evidence could have strengthened or weakened the victim's credibility in the minds of the jurors. In other words, the uncharged-offense testimony was not necessarily prejudicial. In any event, a party "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). By failing to provide any legal authorities to support his argument concerning prejudice on appeal, this is precisely what defendant has done.

Thus, defendant's claim of prosecutorial misconduct appears to be erroneously predicated on the prosecution's good-faith effort to admit proper evidence at trial. See *Noble*, 238 Mich App at 660-661. Consequently, defendant has failed to show that the prosecution denied him his right to a fair and impartial trial. See *Brown*, 279 Mich App at 134.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his trial counsel provided ineffective assistance of counsel, entitling him to a new trial. We disagree.

To preserve a claim of ineffective assistance of counsel on appeal, a defendant "must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant failed to move for a new trial or request an evidentiary hearing or raise the issue of ineffective assistance of counsel before the trial court. Therefore, this issue is not preserved for appellate review. Ineffective assistance of counsel is a mixed issue of fact and constitutional law. *People v Jackson*, 292 Mich App 583, 600; 808 NW2d 541 (2011). Because defendant failed to raise the issue of ineffective assistance of counsel before the trial court, this Court's "review of this issue is limited to mistakes apparent on the record." *Id*.

"There is no question that a criminal defendant has a state and federal constitutional right to present a defense." *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984). The right to assistance of counsel for a defense is "fundamental to our system of justice [and] is meant to assure fairness in the adversary criminal process." *United States v Morrison*, 449 US 361, 364; 101 S Ct 665; 66 L Ed 2d 564 (1981). "To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *Jackson*, 292 Mich App at 600-601. Effective

assistance of counsel is strongly presumed and the party claiming ineffectiveness must overcome this presumption. *People v Horn*, 279 Mich App 31, 37 n 2; 755 NW2d 212 (2008). When examining the effectiveness of counsel, reviewing courts must apply "a heavy measure of deference to counsel's judgments." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

### 1. IRRELEVANT OR IMMATERIAL EVIDENCE

Defendant maintains that the prosecution's questions regarding the uncharged incident of sexual abuse were irrelevant and immaterial, and that defense counsel should have objected to these questions at trial. Witness testimony concerning the dismissed CSC-I charge was not irrelevant or immaterial. It spoke directly to a topic that was essential for determining defendant's guilt or innocence, namely, the victim's reliability. The prosecution's uncharged-abuse questions supplied the jury with the information necessary to render an informed verdict at trial. The questions did not prevent the jury from engaging in "an objective appraisal of the defendant's guilt or innocence." *DerMartzex*, 390 Mich at 413. Therefore, the evidence's probative value outweighed any risk of prejudice to defendant. See *id*. Consequently, defense counsel was not ineffective for failing to object to this testimony at trial.

### 2. HEARSAY TESTIMONY

Defendant contends that testimony elicited from three different witnesses—the victim's mother, the medical doctor, and the CAC employee—constituted hearsay that defense counsel should have objected to. At the time of these proceedings, MRE 801(c) defined hearsay as a statement "other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[1]

At trial, defense counsel asked the victim's mother what the victim told her about what happened with the defendant on cross-examination. The victim's mother stated, "She told me everything that had happened. Would you like me to go into detail?" and defense counsel responded, "Yes." The victim's mother then stated that the victim told her that defendant woke the victim up, brought her to his room, and made her suck chocolate off his genitals. Although defense counsel initiated this line of questioning, defendant argues that defense counsel should have objected on hearsay grounds. A defendant "opens the door" to the admission of typically inadmissible evidence when it inquires into or makes reference to such evidence. *People v Figgures*, 451 Mich 390, 399-400; 547 NW2d 673 (1996). Moreover, a defendant "cannot complain of [the] admission of testimony which [the] defendant invited or instigated." *People v Whetstone*, 119 Mich App 546, 544; 326 NW2d 552 (1982). Although this statement was clearly made out of court, defendant mistakenly argues that the prosecution elicited this testimony when it was in fact elicited by defense counsel. It would be highly unusual for defense counsel to object

---

[1] MRE 801(c) was amended effective January 1, 2024, and maintains the same definition of hearsay in an updated format. All citations to the Michigan Court Rules herein will be to the version in effect at the time of defendant's trial.

to his own conduct in court, and defendant cannot now claim error where defense counsel opened the door to potentially inadmissible evidence. See *id.*

As for the CAC employee's testimony, defense counsel asked the employee to tell the court what the victim disclosed about defendant's sexual abuse. The employee responded that, according to the victim, defendant made the victim go up to his room and suck Nutella chocolate off his genitals on two different occasions. Like the mother's testimony, the employee's testimony clearly entailed a statement made out of court. Nevertheless, defendant has failed to show that defense counsel offered the statement to prove the truth of the matter asserted—that sexual abuse occurred. In his closing argument, defense counsel indicated that his purpose for eliciting the CAC employee's testimony had been to undermine the victim's credibility in the minds of the jury, not to prove that the stated abuse did not occur. Such a strategy is permissible under MRE 607, which states that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Moreover, defendant has again ignored the fact that it was his own counsel who called the employee to testify, not the prosecution, and it was defense counsel who specifically elicited this testimony on direct examination. Defendant opened the door to this testimony, and cannot now complain of its error. See *Whetstone*, 119 Mich App at 544.

Lastly, the doctor testified that the victim told her that she wanted to have her mouth tested for sexually transmitted diseases. Although this statement was made out of court, the purpose for which it was offered at trial remains unclear. The doctor made this statement in response to a very open-ended question from the prosecution. The uncertainty underlying the testimony's purpose means that defendant cannot definitively overcome the presumption that defense counsel's conduct at trial was ineffective. See *Horn*, 279 Mich App at 37 n 2.

Regardless, even if defendant could establish this testimony as hearsay, the statement would fall into the exception in MRE 803(4) for "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." In *People v Duenaz*, 306 Mich App 85, 95; 854 NW2d 531 (2014), this Court stated that the purpose underlying MRE 803(4) is the "existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." In cases involving suspected child abuse, statements made by the child are admissible under this exception when the statements are deemed trustworthy on the basis of the totality of the circumstances. *Id*. Factors that may be considered in a trustworthiness analysis include:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in

the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Id*. at 95-96 (quotation marks and citation omitted).]

In this case, the victim was 10 years old when she made the statement. Because this Court has recognized statements made by children younger than 10 years old to be reliable, the victim's maturity is not an issue. *Id*. at 96. The prosecution elicited this statement by means of an open-ended question. Also, it appears that the victim initiated the examination, which occurred only one year before the trial. The doctor testified that she issued her diagnosis of child sexual abuse on the basis of the victim's behavior and physical symptoms. Although the doctor did not specify what these physical symptoms were, her testimony does suggest that the victim was still suffering from some kind of emotional pain or distress during the examination. *Id*. at 95. The record does not make it clear whether the victim implicated defendant as the perpetrator or described defendant's abuse to the doctor during the examination. See *id*. at 97. The disputed portion of the doctor's testimony did not implicate defendant as the perpetrator. Overall, the disputed testimony constituted a mere request for a medical examination from the victim. On the basis of the totality of the circumstances, there is nothing to indicate that the victim's out-of-court statement was unnecessary, untrustworthy, or that it did not fall within the MRE 803(4) exception to hearsay. See *id*. at 95-97.

For these reasons, defendant has failed to establish ineffective assistance of counsel based on the failure to object to the testimony of these witnesses.

## 3. LIMITING JURY INSTRUCTION

Defendant also argues that defense counsel erred by failing to request a limiting jury instruction in light of the dismissed CSC-I charge.

A defense counsel's failure to object to current cautionary jury instructions or to request new instructions can establish ineffective assistance of counsel. *People v Ortiz*, 249 Mich App 297, 311-312; 642 NW2d 417 (2001). However, to prove that defense counsel was ineffective, defendant must show that "but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different." *Id*. at 311. Specifically, defendant argues that defense counsel should have requested M Crim JI 4.11—Evidence of Other Offenses-Relevance Limited to Particular Issue—as a limiting instruction, which states:

(1) You have heard evidence that was introduced to show that the defendant committed [a crime / crimes / improper acts] for which [he / she] is not on trial.

\* \* \*

(3) You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the defendant is a bad person or that [he / she] is likely to commit crimes. You must not convict the defendant here because you think [he / she] is guilty of other bad conduct. All the evidence must

convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find [him / her] not guilty.

Defendant has failed to show that the inclusion of this limiting instruction at trial would have changed the outcome. It remains unclear whether the testimony concerning the uncharged incident of sexual abuse impacted the jury's verdict. On the one hand, the evidence could have proven favorable to the victim by strengthening her credibility with the jury. On the other hand, the testimony could have had the opposite effect, prejudicing the victim's credibility because of her uncertainty regarding the uncharged offense. Because defendant has failed to establish that the limiting instruction would have favored defendant or changed the outcome, defendant has failed to establish ineffective assistance of counsel in this regard. See *DerMartzex*, 390 Mich at 417.

## III. DEFENDANT IS NOT ENTITLED TO RESENTENCING ON THE BASIS OF THE SUBSEQUENT ABUSE INFORMATION IN THE PSIR

Lastly, defendant argues that he is entitled to resentencing given the information regarding the uncharged incident of sexual abuse in the PSIR. Defendant argues that the trial court erred by failing to strike this information. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (quotation marks and citation and omitted). Defendant objected to the inclusion of the second incident of sexual abuse in the PSIR. The trial court subsequently made a note in the PSIR, indicating that there was no evidence of a second incident of sexual abuse presented at trial. Therefore, this issue is preserved for appellate review. We review a trial court's actions regarding a defendant's challenge to the accuracy of information in a PSIR for an abuse of discretion. *People v Maben*, 313 Mich App 545, 552; 884 NW2d 314 (2015). "A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes." *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008).

A defendant has a due-process right to be sentenced on the basis of accurate information. US Const, Am XIV; Const 1963, art 1, § 17; *People v Zinn*, 217 Mich App 340, 347-348; 551 NW2d 704 (1996). The PSIR is an information-gathering tool for the sentencing court's use and is intended to ensure that a defendant's punishment is tailored to the offense and the offender. *People v Lampe*, 327 Mich App 104, 120; 933 NW2d 314 (2019). The PSIR "follows the defendant to prison" and "can have ramifications related to security classification or parole." *Id*. (quotation marks and citations omitted). The MDOC makes "[c]ritical decisions . . . regarding a defendant's status based on the information contained in the [PSIR]." *Uphaus*, 278 Mich App at 182 (quotation marks and citation omitted). Therefore, "the PSIR should accurately reflect any determination the sentencing judge has made concerning the accuracy or relevancy of the information contained in the report." *Id*. (quotation marks and citation omitted). In short, a PSIR must include a "complete description of the offense and the circumstances surrounding it." MCR 6.425(A)(b).

A sentencing court must respond to challenges to a PSIR's information. *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003), overruled in part on other grounds *People v Barrera*, 500 Mich 14; 892 NW2d 789 (2017). Nevertheless, the sentencing court has "wide latitude" with responding to such challenges. *Spanke*, 254 Mich App at 648. "The court may determine the accuracy of the information, accept the defendant's version, or simply disregard the challenged information." *Id*. "Should the court choose the last option, it must clearly indicate that it did not consider the alleged inaccuracy in determining the sentence." *Id*. at 649.

If the trial court finds the challenged information in the PSIR inaccurate or irrelevant, "it must strike that information from the PSIR before sending the report to the Department of Corrections." *Id*. The court's finding must be made part of the record as well. *People v Waclawski*, 286 Mich App 634, 690; 780 NW2d 321 (2009). However, a court's failure to strike disregarded information from the record can be harmless error. *Id*. A trial court's failure to correct inaccurate information in a PSIR constitutes harmless error when the disputed information "would have no determinative effect on the [defendant's] sentence." *People v McAllister*, 241 Mich App 466, 473; 616 NW2d 203 (2000).

Defendant argues that the trial court erred by failing to strike the information regarding defendant's second offense from the felony record. Although the trial court dismissed the second CSC-I charge, testimony regarding the second incident of sexual assault was relevant insofar as it related to the victim's credibility. See MRE 401, 402, 403. Although the testimony concerning the uncharged abuse was relevant to the jury's verdict, the trial court found the information irrelevant with respect to defendant's sentence. This is evident by the fact that the trial court added a note in the PSIR, which stated that no evidence of a second incident had been introduced at trial. This note indicates that the trial court did not consider the uncharged incident of abuse when it sentenced defendant. Therefore, the trial court's failure to strike the second incident information constituted, at most, harmless error. See *McAllister*, 241 Mich App at 473.

Defendant also asserts that this note was inaccurate, given the abundance of trial testimony regarding the uncharged incident, and as such, the trial court abused its discretion when it added this inaccurate information to the PSIR. However, defendant's assertion ignores the fact that both the prosecution and the defense elicited this testimony, not for the sake of proving that the uncharged offense occurred, but to bolster or weaken the victim's credibility with the jury. Overall, defendant is not entitled to resentencing.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen